THE PEOPLE, Respondent, v. WILLIAM F. EDWARDS et al., Appellants.

George Beebe for Appellants.

U. S. Webb, Attorney-General, and Bayard Rhone for Respondent.

HENDERSON, J., *pro tem.*—By an information filed against them the defendants were jointly charged with four separate acts of grand theft, in a like number of counts, of the moneys of one Elizabeth Bushey. They were tried by the court without a jury and found guilty as charged. Both defendants have appealed from the judgments of conviction

and the order denying their motion for a new trial on the ground of the insufficiency of the evidence and alleged errors in the admission of testimony.

While the defendants concede that the evidence, although conflicting, is sufficient to show that complainant was induced to part with her money, which aggregated $2,800, by means of their fraudulent representations, they urge, however, that such evidence was insufficient to support the judgments by reason of a lack of the corroboration required by section 1110 of the Penal Code. The defendants claim that the money was paid to them in consideration of the assignment to Mrs. Bushey of their interest in a certain oil lease in Fresno County by the terms of which there remained but less than a year within which to commence drilling operations. The record discloses that the prosecution relied principally upon the testimony of the complainant to support the convictions as the negotiations between the parties were conducted without the presence of other witnesses.

Prior to the twenty-first day of January, 1932, the defendants were strangers to Mrs. Bushey, who resided with her invalid husband in Pasadena. They called at her home and falsely represented that they were ready to drill an oil-well on the premises and had already spent several hundred thousands of dollars in the development of the property. The defendants suggested, among other things, their desire to have her as a partner in the venture so that she might receive the benefit of their previous expenditures. Being unsuccessful in consummating the deal, the defendants met the complainant on the following day, and after reiterating their desire for a partnership arrangement, they offered her "3000 in stock, *in* interest in the oil well, and three percent royalty" in exchange for the proceeds of her bank account in the sum of $300 and two Texas lots. Following her acceptance of the offer an agreement was executed between the parties by the terms of which defendants assigned to Mrs. Bushey their personally owned "two-sixths (2/6) interest of one-half (1/2)" of the lease in consideration for the money and the lots.

At a subsequent meeting of the parties by falsely representing that the driller employed on the leased premises refused to continue his operations without some assurance

of their ability to compensate him, the defendant induced Mrs. Bushey to execute and deliver to them her promissory note in the sum of $300 for the avowed purpose of merely showing it to the driller. On the day mentioned in the second count of the information, the defendants, falsely representing that the note had been taken from them against their will and placed in a bank for collection and would require payment with interest within thirty days, persuaded the complainant to place in their possession the sum of $350 for the pretended purpose of securing the cancellation of the note. On this occasion the defendants returned the deeds to the Texas lots to Mrs. Bushey in consideration for her promissory note in the sum of $2,900, and they claim that the $300 above mentioned, together with the amounts set forth in counts III and IV of the information, were received in payment of this obligation.

On the occasion indicated by count III of the information, the defendants fraudulently representing that additional money was required for payment of the driller, induced Mrs. Bushey to part with the sum of $700 for this particular purpose. It likewise appears from the complainant's testimony that the defendants at the same time caused her to believe that she was receiving a larger share of their royalty interest for this additional sum of money. At the time specified in count VI of the information in response to defendants' representation that they could advantageously purchase some second-hand oil-pipe for use on the lease, the complainant furnished them with the additional sum of $1500. This was followed by an immediate assignment to her by defendants of their "⅓ personally owned interest of the whole lease" in consideration of the sum of $3,200, receipt of which was acknowledged. It can be clearly determined from the evidence that the complaining witness, due to her lack of sophistication, never possessed a satisfactory understanding of the exact nature of the property rights she expected to receive from defendants during the course of their several transactions. Apparently complainant contemplated that she was merely securing the right to share in defendants' royalty under the lease, which was valueless to her in the absence of their purported endeavor to produce oil on the premises. Upon becoming apprehensive of her position under the lease, Mrs. Bushey learned by an investigation

that she had been misled as to the interest actually acquired by her and the purposes for which the money had been used. Notwithstanding her complaint in the matter, the defendants were able to obtain the complainant's authorization to sell her interest in the lease. Being unsuccessful in securing a purchaser they persuaded Mrs. Bushey to reassign her interest in the lease to them in return for their unsecured note in the sum of $2,900. The defendants admit that an oil-well was never drilled upon the leased premises, or a driller employed for such operations, or oil-well pipe purchased by them for use in the enterprise.

The defendants first claim, as previously stated, that the evidence in support of the several acts of grand theft charged in the information indicate them to be that species of grand theft known as obtaining money by false pretenses and urge, as a ground for reversal, that said false pretenses lack the corroboration "by the testimony of two witnesses, or that of one witness and corroborating circumstances" required by section 1110 of the Penal Code. ■ In this connection, it should be observed that the amendment to section 484 of the Penal Code to include the offenses formerly charged as grand larceny, embezzlement, and false pretenses did not repeal, either directly or by implication, the *quantum* of evidence required by section 1110 of the Penal Code to sustain a conviction of that variety of grand theft denounced under section 532 of the Penal Code as obtaining money, labor or property by false pretenses. (*People* v. *Carter*, 131 Cal. App. 177 [21 Pac. (2d) 129].)

The respondent maintains that the evidence is sufficient to sustain defendants' conviction under the classification of theft commonly known as larceny by trick and device, proof of which is not governed by the provisions of said section 1110 of the Penal Code. The requisites of this particular species of theft are stated in the recent case of *People* v. *White*, 124 Cal. App. 548, at page 553 [12 Pac. (2d) 1078, 1080], as follows: "Where a person obtains the money or other property of another by trick or device, as by falsely and fraudulently representing that such property when received is to be applied to a described purpose or object when in fact there exists no purpose or object corresponding to that described, and the owner, through such fraud, parts with the possession of his property without intent to part

with the title thereto to the defendant or that it shall go toward any object or purpose other than the described purpose, and the person receiving the property receives it with the intent not of applying it to the purpose or object such as he has described, but of using it as he chooses, as if it were his own, the crime of larceny by trick and device, now included in the crime of theft under section 484 of the Penal Code, has been committed." (Citing cases.)

The offenses of larceny and of obtaining money by false pretenses are admirably distinguished in the case of *People* v. *Delbos,* 146 Cal. 734, at page 736 [81 Pac. 131], where the court, in quoting from Harris on Criminal Law, third edition, page 194, said: " 'The most intelligible distinction between false pretenses and larceny has been thus set forth: "In larceny, the owner of the thing has no intention to part with his property therein *to the person taking it,* although he may intend to part with the possession. In false pretenses the owner does intend to part with his property in the money or chattel, but it is obtained from him by fraud." ' (The italics are our own.)"

██ Turning our attention to an analysis of the testimony in support of count I of the information, it shows that the complaining witness, although induced to consummate the transaction by the false pretenses of the defendants, not only intended to but actually did receive a certain interest in an existing oil lease in exchange for her money and property. Obviously under these circumstances the inference is inevitable that she intended to transfer the title as well as the possession of the same to defendants. In view of the legal principles above discussed, it is apparent that the offense of false pretenses alone can be predicated upon such evidence, which is insufficient to warrant a conviction by reason of the lack of corroboration required by section 1110 of the Penal Code.

██ A similar consideration of the evidence supporting count II of the information leads to the conclusion that it is sufficient to sustain the judgment upon the theory of larceny by trick and device. The particular money, which formed the basis of this cause of action, was obtained from this complainant for the pretended purpose of payment to a person, who was nonexistent, in order to secure the purported return of her promissory note. It is inconceivable, under the cir-

cumstances, that she contemplated other than a transfer of the mere possession of her money to defendants for the specific, though false, purpose represented by them.

■ The application of the legal principles involved herein to the evidence educed in support of counts III and IV of the information creates a more difficult problem. It appears from her testimony that the complainant was moved to part with her money not only for the specific purposes of paying the wages of the driller and the purchase of pipe, but also with the intention of receiving from the defendants an increased share of royalty interest for each additional payment. While her testimony in this respect may appear conflicting, yet it was the province of the trial judge, as a trier of fact, to reconcile and adjust the apparent inconsistency to his own satisfaction. (See *People* v. *Jensen*, 15 Cal. App. 220, 223 [114 Pac. 585].) Moreover, under such circumstances, we are not authorized to disturb, on appeal, the result so reached. (*People* v. *Ah Gee*, 37 Cal. App. 1 [174 Pac. 371].) In our opinion the testimony of the complainant as viewed by the trial court was sufficient to warrant the defendants' conviction of theft by trick and device under counts III and IV of the information.

■ It is further urged by defendants that the offense of theft by trick and device also requires the corroboration specified by section 1110 of the Penal Code before a conviction can be sustained. While this section expressly applies to the offense of false pretenses alone, yet defendants endeavor to construe certain language employed in the case of *People* v. *Leach*, 106 Cal. App. 442, at page 463 [290 Pac. 131], as supporting such a contention. This argument is without merit. There the court prefaced its discussion with the statement that the offense, if any, under consideration, constituted theft by false pretenses and not by trick and device.

■ The defendants further claim that the court erred in permitting the prosecution to ask a question of the witness Joos, a co-owner of the lease, which raised the inference that defendants had by means of false pretenses similarly sold an interest in the lease to a Mrs. Warner for the purported purpose of obtaining money to drill on the premises. Conceding that the question was improper it elicited an answer favorable to appellants, which constitutes a complete answer

to the claim of impropriety in its asking. (*People* v. *Wynn*, 133 Cal. 72 [65 Pac. 126]; *People* v. *Kelly*, 146 Cal. 119 [79 Pac. 846].)

Finally, appellants urge that the admission of the testimony of the witness Cameron, over their objection, that the land covered by the lease had a "speculative value on the basis of oil property", was error. Conceding that the testimony was inadmissible and the witness insufficiently qualified, the appellants fail to satisfactorily show that such evidence was either unfavorable or prejudicial. Be that as it may, after a review of the entire record, we are convinced that the conviction of defendants upon counts II, III and IV was just and has resulted in no miscarriage of justice.

The order denying appellants' motion for a new trial and the judgment under count I are reversed, and a new trial directed as to said count; and the order denying the motion for a new trial and the judgments under counts II, III and IV are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 2, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 17, 1933.