[Crim. No. 2700.   Second Appellate District, Division One.—June 14, 1935.]

THE PEOPLE, Respondent, v. EARL WEBER, Appellant.

Edith A. Faulkner and Donald Kolts for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

ROTH, J., *pro tem.*—One Caywood, the complaining witness in this case, waiting in a bus station between 7 and 8 o'clock P. M. on December 4, 1934, met one Richards, who engaged him in conversation, as result of which Richards decided to accompany Caywood, who said he had an engagement to see "young ladies". While walking on Main Street in the city of Los Angeles, from Sixth Street south to Ninth Street, the defendant Weber bumped into Richards and said he was a stranger and asked where Ninth Street was. After he was directed, defendant told Richards he had just come down from Canada on a real estate deal, and that Americans were poor sports, whereupon they commenced matching pennies with dollars as the stake, all three walking together during the process. In paying his losses to Richards, defendant pulled out of his pocket a roll or "wad" of bills, which afterward proved to be or appeared to be Mexican currency wrapped in a $1 bill of United States currency. Defendant then said that the complaining witness was a poor sport, suggesting that he get into a game. At one point during the walk, when defendant stopped to fix his shoe, Richards said to the complaining witness: "We might as well take him", and told the complaining witness he knew how defendant was matching and suggested that he hold tails. All three then engaged in a "game", which was about to reach a $5 limit, when officers intervened and arrested defendant and Richards. During the two or three times which the parties matched before the arrest, Richards won the money on each occasion. Immediately before the physical seizure by officers of Richards and defendant, Richards stuck the money which he had won from Caywood, amounting to $2.73 (all that Caywood had) into Caywood's pocket, from which the officers extracted it. Prior to the meeting between Richards and Caywood, the officers had been following Richards, the defendant and some others since 6 o'clock of the same evening. They saw Richards go into the bus station, come out with

Caywood and walk south on Main Street, and watched the pair as they were accosted by defendant, and then from a distance watched the game up to the point when the arrest was made. During all .this time, the three engaged in the game were also followed by one Marlowe and one Tribeau, who had been seen with Richards and defendant by the officers prior to the time Caywood was picked up by Richards.

Defendant was charged with "petty theft with prior conviction of a felony". At the trial the prior conviction was both admitted and proved.

█ The principal point urged by defendant is that the evidence is insufficient to prove the crime charged. Whether the evidence is sufficient obviously depends upon the collusion, if any, between Richards, who actually got Caywood's money, and. the defendant. While mere association does not make a conspiracy, it is settled that the fact· of conspiracy may. be proved circumstantially by evidence of other facts and circumstances, when they are inconsistent with any other rational conclusion and when thus being inconsistent, it may be fairly inferred that a conspiracy does in fact·exist. (Pen. Code, sec. 182; *People* v. *Shurtleff,* 113 Cal. App. 739 [299 Pac. 92]; *People* v. *Jones,* 136 Cal. App. 722 [29 Pac. (2d) 902]; *People* v. *Brown,* 99 Cal. App. 117 [277 Pac. 908]; *People* v. *Flanagan,* 65 Cal. App. 268 [223 Pac. 1014]; *People* v. *Cory,* 26 Cal. App. 735 [148 Pac. 532].)

Upon the facts which we have briefly summarized, we have no difficulty in agreeing with the verdict of the jury that Richards and defendant were actually in a conspiracy to "take" Caywood. █ The fact that Caywood was willing to and did conspire with Richards to "take" defendant does not help defendant any, as it is precisely by appealing to the cupidity of·their victims that "artists" of defendant's type operate.

█ Defendant criticises some of the instructions given. All his criticism, however, is based on the assumption that the evidence is insufficient to prove defendant guilty of any crime. Defendant says, in his brief: "We concede that the instructions given were fair had there been evidence to prove any crime." The evidence shows the fact of conspiracy on the part of the defendant, as we have already pointed out, and establishes the crime of larceny by trick and device, now included in the theft statute. (Pen. Code, secs. 484, 486, 487,

488; *People* v. *Edwards*, 133 Cal. App. 335, 340 [24 Pac. (2d) 183].)

We find no error in any of the instructions or anywhere in the record. The reporter's transcript, on the contrary, demonstrates that the trial court was more than ordinarily liberal and indulgent with defendant, who insisted on defending himself.

Judgment and order affirmed.

Houser, Acting P. J., and York, J., concurred.