[Crim. No. 2127. First Appellate District, Division Two.—October 11, 1940.]

THE PEOPLE, Respondent, v. GEORGE BRENNAN, Appellant.

Ralph O. Marron for Appellant.

Earl Warren, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was charged with the crime of grand theft. (Pen. Code, sec. 484.) The charge was contained in an information filed by the district attorney. The defendant entered a plea of not guilty. The jury returned a verdict against him. He made a motion for a new trial. The motion was denied. He has appealed from the judgment and from the order denying him a new trial.

It was the theory of the district attorney that the defendant represented to the prosecuting witness, E. Werner, that the defendant owned some race horses that had been attached for a feed bill amounting to $300, and that if the bill was not paid said horses would be sold and he would lose them; that for the purpose of paying said feed bill he desired to borrow $300; that acting on such representation E. Werner loaned defendant the sum of $300; that in truth and in fact defendant did not owe a feed bill on any horses; and that the money has never been repaid.

 The defendant asserts that the specific charge against him was, as shown above, the offense of obtaining money under false pretenses. But continuing, the defendant further asserts the prosecution introduced no testimony which corroborated the testimony of the complaining witness and that such corroboration was essential to sustain the judgment. (*People* v. *Edwards,* 133 Cal. App. 335 [24 Pac. (2d) 183], and *People* v. *Carter,* 131 Cal. App. 177 [21 Pac. (2d) 129].) The Attorney-General does not question the rule but he calls

to our attention certain facts which he claims show the offense complained of was that of obtaining money by trick and device (Pen. Code, sec. 332) and therefore the rule is not applicable to the instant case. Werner testified that he and Brennan met at Bay Meadows during the meeting in the spring of 1939. Werner was an elderly man seventy-eight years of age. Brennan was about forty-four. From the day they first met Brennan and Werner commenced to talk horses and racing. Brennan told Werner much about the various horses and induced the latter to make certain bets. The two met frequently at Bay Meadows and afterwards at Santa Anita. While at Bay Meadows Brennan told Werner of a scheme he had to make a winning. A horse known as Unparallel was on the track. Brennan said he knew of another horse which the witnesses speak of as the "ringer". That horse Brennan stated looked so much like Unparallel that many could not tell one from the other. Brennan stated it was his plan, when the meeting was held at the Hollywood track, to substitute the "ringer" for Unparallel and that the "ringer" would certainly win large sums. Werner gave Brennan $1500 to bet on the "ringer", which Brennan claimed was stabled near by the Santa Anita race track. Difficulties arose in carrying the plan into execution. Many delays followed. Werner says the "ringer" was never run and he never got his money back. The defendant claims the bet was to be placed on Unparallel, that it was so placed, the horse was disqualified, and the money was lost. But he also testified the bet was oral and he produced not even a coupon as evidence of the bet. In the month of October, while the parties were still waiting for the "ringer" to be run and the $1500 to be bet on him, defendant and one Wagner called on Werner and asked the latter for $300 to pay the feed bill against some horses. While there are conflicts in the testimony it must be conceded there is some evidence to the effect that Brennan represented the "ringer" was one of those horses whose feed bill had not been paid. There was evidence neither Wagner nor Brennan owned any horses and that neither owed a feed bill on any horses. Therefore the possession of the $300 was not obtained honestly. Similar principles were before the court in *People* v. *Sichofsky*, 58 Cal. App. 257 [208 Pac. 340]. At page 263 the court said: "But as it is, the possession of the money of each complaining witness was obtained through fraud and deceit. It therefore

follows that its fraudulent appropriation by appellant to his own use, he having had from the beginning the intention to obtain it for that purpose, constituted, in law, an act of larceny. (*People* v. *Delbos,* 146 Cal. 734 [81 Pac. 131]; *People* v. *Schwartz,* 43 Cal. App. [696] 697 [185 Pac. 686].) As was said in *People* v. *Tomlinson,* 102 Cal. [19] 23 [36 Pac. 506], there must often be, on the *facts,* a very narrow margin between cases of larceny and embezzlement, because the character of the crime depends upon the secret intention of the parties, which is often difficult to ascertain; but, so far as the *law* is concerned, the principles upon which the question of guilt or innocence is to be determined are plain. Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. But where the possession has been obtained through trickery or deceit, with the intent at the time the defendant receives the goods to convert them to his own use, and the owner of the goods parts merely with the possession, and not with the title, the offense is larceny. It was a question for the jury to decide whether appellant obtained possession of the money fraudulently, with the intent at the time he received it to convert it to his own use, and whether the complaining witnesses intended to part with the ownership at the time of delivery. By its verdict the jury has decided these matters adversely to appellant's contention; and as there is ample evidence to sustain the jury's conclusion, we may not disturb it." So in the present case, if the jury believed the story as told by the complaining witness, and from its verdict we must assume it did, then the jury was warranted in returning a verdict of guilty and the offense constituted larceny as distinguished from the offense of obtaining money under false pretenses. That being so the provisions of section 1110 of the Penal Code are not applicable. ▇▇ But if we assume the facts involved the offense of obtaining money under false pretenses, the Attorney-General contends there was an abundance of such evidence. We think that is so. He calls to our attention that the talking was done sometimes by the defendant and sometimes by Henry Wagner of whom the defendant said, "Anything Wagner says is OK." All of the facts, except the representations and the falsity thereof are abundantly supported. The facts so excepted are supported by the testimony of other witnesses including the defendant. As to the

representation it was testified to by both Werner and Brennan. The only variance is that the defendant claims Wagner. did the talking in his presence. Werner says the defendant did the talking. The undisputed evidence was that the $300 was paid by E. Werner by drawing a check on October 17, 1939. It was dated at Watsonville. He testified he handed it to Brennan. The latter delivered it to Wagner. He had Yvonne Derran cash it. She paid it to him as "Mr. Obermeier". She testified she had no horses and had no horse feed bill against anyone. Furthermore the defendant testified a conversation took place between Werner and Wagner at the former's ranch at about the time specified by Werner in which Wagner said he had some horses, that they had been attached, that he needed $300, and that Wagner asked Werner to advance said sum. Continuing he testified he was not present when the check was turned over to Wagner and that he got none of the proceeds. Considering all of these facts we are unable to say there was no corroboration of the testimony of the prosecuting witness.

The defendant complains because the trial court admitted the evidence concerning Unparallel. He asserts it was an instance of receiving evidence of other wrongful acts or crimes. We think not. It was distinctly a part of the offense on trial.

Finally the defendant contends the trial court erroneously allowed the district attorney " . . . to introduce evidence showing that over a period of time the complaining witness, Werner, had given to Brennan and Wagner considerable sums of money to be placed as bets on horse races. That as a result of these moneys given to bet the complaining witness lost between $7000 and $8000." That Werner testified he lost $8,000 through Brennan is true. But he testified that he never bet more than $2 on a race. He did not testify that his loss of $8,000 was composed of bets in whole or in part.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1940.