[Crim. No. 3686. Second Dist., Div. Two. Apr. 21, 1943.]

THE PEOPLE, Respondent, v. FRED WALLACE STANLEY, Appellant.

John J. Craig for Appellant.

Robert W. Kenny, Attorney General, Bayard Rhone, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan and George W. Kemp, Deputies District Attorney, for Respondent.

McCOMB, J.—From a judgment finding him guilty of grand theft after trial before the court without a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

The evidence being viewed in the light most favorable to the People (respondent), and pursuant to the rules set forth in *People* v. *Pianezzi,* 42 Cal.App.2d 270, 277 [108 P.2d 685], the essential facts are:

The complaining witness, Mr. Jones, advertised in a newspaper that his automobile was for sale. In response to this advertisement defendant contacted Mr. Jones on several occasions. During these conversations Mr. Jones told defendant that he would not be interested in taking any property by way of trade for his car, but that in case he should be on the point of being inducted into the military service, he might accept a lower price for his car. These various telephone conversations culminated in Mr. Jones and defendant meeting at the intersection of Melrose and Fairfax Avenues in Los Angeles. At this meeting defendant asked Mr. Jones his final price for his automobile, to which Mr. Jones replied, $1,600. Whereupon, defendant stated that he did business

with a branch of the Security Bank located at Melrose and Fairfax Avenues, that he would ascertain from the bank how much of the $1,600 it would lend him, and that he would pay the balance of the purchase price himself. Mr. Jones indicated that this arrangement would be satisfactory to him.

Subsequently defendant asked Mr. Jones if his finance company, the People's Finance Company in Beverly Hills, would finance his purchase of the automobile. Mr. Jones indicated that they might do so. Discussions then ensued between defendant, Mr. Jones, and a Mr. Hill representing the People's Finance Company. These discussions ended with an agreement whereby defendant promised to pay Mr. Jones $1,600 for the automobile. The purchase price was to be paid by the cancellation of Mr. Jones' indebtedness of $500 to the finance company, by defendant turning over to Mr. Jones the $500 loaned by the finance company to defendant, and by the payment of $600 in cash by defendant to Mr. Jones. Pursuant to this arrangement a conditional sales contract was executed by Mr. Jones' wife, in whose name the title to the automobile was registered, and defendant. This contract provided that defendant was to purchase the automobile for the total sum of $1,790.48; $190.48 representing a financing charge, $600 in cash, and the balance in installments of $66.11 per month commencing September 29, 1941.

This contract Mrs. Jones assigned to the finance company. Whereupon, the finance company cancelled Mr. Jones' previous indebtedness to them in the sum of $500, credited defendant with having paid $190.48 financing charge, and gave Mr. Jones $500 in cash.

When they left the finance company's office defendant told Mr. Jones that he could not give him the $600 in cash still due, since he was in the midst of a real estate transaction and could not afford to turn the money over to him that afternoon. He stated, however, that he would leave with Mr. Jones, as security for the $600 he owed him, a note of a close friend in the sum of $750, upon which $100 had been paid and upon which the balance was due October 15, 1941.

Mr. Jones replied that he would not accept the note or anything like it, but would keep the car until he received the $600 from defendant. Defendant then stated that he would not sell the note; that he could not endanger his friendship with Mr. Clark, the payor, by disposing of or discounting the note to anyone. He said in addition:

"To prove to you that the note has a market value and that it is a legitimate piece of paper, I have a man by the name of G. W. Watson who is in the discount business, . . . and he also has known this man for approximately 20 years, and he knows the man is good, he has bought paper from him before, and he would be very glad to have this paper if I would consent to sell it, but I have this deal this afternoon, and I need this money, and I will leave this note with you and I will bring to you an agreement of Mr. Watson to purchase this note at any time for a certain amount of money" in excess of $600.

Mr. Jones replied that he would like to accommodate defendant and that he should bring him a card or a letter from someone in the discount business agreeing to purchase the note. He further stated that he was not accepting the note as payment and that he was merely holding it, and must have his money the following day. To this defendant agreed. Shortly thereafter defendant went to Mr. Jones' home in Beverly Hills and showed him a business card which read "G. W. Watson, Loans" and gave an address in a downtown office building of Los Angeles. It was stated on the back of the card in ink, that the signer, G. W. Watson, would accept the note above referred to for the sum of $600.

Again Mr. Jones told defendant he was not in favor of the transaction, but wanted defendant to bring him the money the following day. This defendant agreed to do. After handing the card back to defendant, Mr. Jones asked him for it, whereupon, defendant replied that Mr. Jones had the card. Mr. Jones stated that he did not, but that defendant had just put it in his right-hand pocket. Defendant insisted however, that he did not have the card and the matter was dropped. Whereupon, Mr. Jones permitted defendant to take the automobile.

The following day, after repeated attempts to reach defendant by telephone, Mr. Jones finally succeeded and was told by defendant that he was not able to bring him the money which he owed. When Mr. Jones asked why, defendant said that he could not bring the money because Mr. Jones had Mr. Clark's note which he would have to surrender in order to get the money. Mr. Jones agreed to meet defendant at his friend's office and surrender the note and get the money. Defendant replied that he had better see if his friend was in

his office. Defendant telephoned Mr. Jones shortly thereafter making an appointment for 9:30 the following morning. At which time Mr. Jones met the defendant who stated that he was sorry but that Mr. Watson was out of town and would not be back until the following week. Mr. Jones then said that he was leaving for the army and that he would leave the note with his wife, who would surrender it when defendant gave her the sum that was due.

Sometime later when Mr. Jones was at home on leave from the army, he contacted defendant who told him that he had collected $50 from Mr. Clark on the note and that he would be glad to give it to Mr. Jones. This offer was refused, and when Mr. Jones told defendant that he had checked up and found many things that he had told him were untrue, defendant merely said, ''What are you going to do about it?''

Defendant has not paid any part of the $600 due, but on the contrary, on óne occasion stated to the complaining witness that he had better settle for $100, because the note which he held wasn't any good.

On October 4, 1941, defendant sold the automobile, that he had obtained from Mr. Jones, to the Kelley Kar Company for $1,250.

This is the sole question necessary for us to determine:

*Was there substantial evidence to sustain the trial court's implied finding that defendant was guilty of larceny by trick and device?*

This question must be answered in the affirmative, and is governed by the following pertinent rules of law:

(1) In larceny by trick and device the owner of the property does not part with title to the appropriated property, since he has no intention of so doing, though he may intend to part with its possession. (*People* v. *Edwards*, 133 Cal.App. 335, 340 [24 P.2d 183]; *People* v. *Santora*, 51 Cal. App.2d 707, 711 [125 P.2d 606].)

(2) When the evidence discloses that grand theft has been committed upon the theory of larceny by trick and device, such offense need not be corroborated in accordance with the provisions of section 1110 of the Penal Code. (*People* v. *Santora, supra,* at page 711.)

Applying the foregoing rules to the evidence in the present case, it appears that defendant obtained possession of Mr. Jones' automobile by larceny through trick and de-

vice. The facts as set forth above disclose that Mr. Jones intended to part with the possession of his automobile only, and did not intend to part with title to it until he was paid the full purchase price thereof.

Since the offense was larceny by trick and device, under rule 2 *supra,* it was unnecessary to corroborate the foregoing evidence in accordance with the provisions of section 1110 of the Penal Code.

In view of our conclusions it is unnecessary to consider defendant's argument relative to the offense of grand theft upon the theory of false pretenses.

For the foregoing reasons the judgment and order are and each is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

A petition for a rehearing was denied May 3, 1943, and appellant's petition for a hearing by the Supreme Court was denied May 20, 1943.