[Crim No. 2966. Third Dist. Oct. 15, 1959.]

THE PEOPLE, Respondent, v. VICTOR S. SWANSON, Appellant.

Leo R. Friedman for Appellant.

Stanley Mosk, Attorney General, Raymond Momboisse, Laurence Drivon, James Sanguinetti and E. James Willett, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Victor S. Swanson was found guilty on Count One of an amended indictment, which count charged him with "A violation of Section 484 of the Penal Code of the State of California, to-wit; Grand Theft, a felony, committed as follows: The said Victor S. Swanson, Ed Doran and Patrick W. Clancy on or about the 8th day of July A.D. nineteen hundred and fifty-five and before the finding of this indictment, at the County and State aforesaid did wilfully, unlawfully and feloniously take personal property of a value in excess of Two Hundred Dollars, the personal property of Operating Engineers Local Union No. 3 of the International Union of Operating Engineers."

Appellant was denied probation and his motion for a new trial was denied. Judgment was pronounced and he has appealed therefrom.

Appellant contends (1) that the evidence did not establish embezzlement, but, at the most, only established the offense of larceny, and (2) that the trial court erred in admitting in evidence certain books and records of the local union and in the giving of certain instructions to the jury. Before discussing these contentions we will give a brief summary of the evidence as shown by the record.

Appellant was the business manager of Operating Engineers Local Union Number 3, an unincorporated labor organization,

whose principal office was located in San Francisco. Edward Doran was the business agent for the union in Stockton. Patrick Clancy was the president of the union, Porter Vanderwark the treasurer, and Clarence Mathews the recording secretary. All of the aforementioned persons were members of the union's executive board. In 1952 the members of the union authorized the executive officers to purchase land for the union for building sites for union offices.

In 1954 Doran learned that a parcel of property located just outside the city limits of Stockton could be purchased. Doran informed Clancy, Mathews, and Vanderwark that the land could be purchased for $33,500. Appellant went to Stockton and after he viewed the land authorized Doran to start negotiating for it. Doran learned that the land could be purchased for $28,500. He communicated with Vanderwark and was told by him to purchase the land for the higher amount. Doran then put up a deposit for $1,000, and shortly thereafter the union purchased the property. A middleman, one Stivers, a real estate agent, was used. The property was sold to Stivers by the American Legion, and Stivers in turn deeded it to the union. The union paid $33,500 for the property. The American Legion received $28,500. Of the surplus Doran received $1,000 (the return of his deposit.) The balance of $4,000 was also received by Doran. This amount, less income taxes of Doran, was turned over to Vanderwark.

Later Doran was approached by a real estate broker who offered to purchase a portion of the land which had been purchased by the union for $20,000. Doran notified appellant of the offer, and appellant told Doran he would take it up with the officers of the union. Thereafter Doran was instructed to go ahead with the negotiations and the property was eventually sold. Again Stivers was used as a middleman. The union sold the land through Stivers. The purchasers paid $20,000 for it, of which $8,500 was paid to the union and the balance was paid to Doran. Doran actually received $9,884.76 from the escrow company. He testified that after retaining the sum of $1,700 for income tax purposes he delivered the balance to the appellant.

A second group approached Doran and offered to purchase another part of the property. This information was communicated to appellant who set a price of $100 per front foot and instructed Doran to negotiate for the sale. Stivers was again used as a middleman. Appellant also set the price that the union was to receive for the property. The surplus was to

be delivered to Doran who was to pay the tax on it. The land was sold to Stivers for $10,858, and he in turn deeded it to the actual purchasers, the Bielkes, for $24,900. The union received $10,858, and the balance of $12.071 was paid to Doran. Doran took this check to San Francisco where he attempted to cash it. He was unable to do so and he gave it to appellant who placed it in his safe at the union office. Two days later appellant used the check to purchase three cashier's checks payable as follows: Ed Doran for $3,950, Patrick Clancy for $800, and appellant for $5,721. The balance of $1,600 was received by appellant in cash.

Appellant testified that Doran had given him the check to cash. He gave Doran $1,600 in cash, and in accordance with Doran's instructions he had the checks made out to Doran and Clancy. The balance was retained by appellant in payment of money Doran allegedly owed him.

In February, 1956, the remaining portion of the land was sold by the union to Doran and appellant for $15,150. Later Doran and appellant sold this portion to the union for $35,500.

The union records disclosed that the union made a small profit on the purchase and sale of the Stockton land.

The record also contains testimony that the local union manager, which position was held by the appellant, was in direct charge and supervision of the business representatives and such other employees as were employed by the union. Appellant had the power, subject to the control of the president of the union (not the local), to hire and fire these employees. He was also in direct charge of the business affairs of the local union. Appellant was described as the boss of the local. Clancy, Vanderwark, Mathews, and Doran were all business representatives of the union, and the major portion of their salaries was paid to them for their duties as such. Their salaries as officers or members of the executive committee were nominal.

Appellant's conviction of grand theft was based on the funds he allegedly received from the Bielke transaction. The theory of the prosecution was that appellant was guilty of embezzlement. This was the only theory on which the jury was instructed. Appellant contends that the evidence at most only established larceny, if it established anything. Appellant argues that since the testimony of Doran showed that before the Bielke transaction was consummated Doran had been instructed that only $10,858 was to be turned over to the union and the balance to Doran, the evidence disclosed that the

intent to defraud existed before the deal was consummated and before the money was received, and therefore the evidence only disclosed the crime of larceny. He relies on the rule stated in *People* v. *Brennan,* 41 Cal.App.2d 143, at page 146 [106 P.2d 36], as follows: ". . . Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. But where the possession has been obtained through trickery or deceit, with the intent at the time the defendant receives the goods to convert them to his own use, . . . the offense is larceny."

Embezzlement is the fraudulent appropriation of property by one to whom it has been entrusted. (Pen. Code, § 503.) Section 504 reads in part: "Every . . . officer, director, trustee . . ., or agent of any association, . . ., who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has . . ., under his control by virtue of his trust, . . ., is guilty of embezzlement." Section 506 of the Penal Code reads in part: "Every trustee, . . ., or person otherwise entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, . . ., is guilty of embezzlement, . . . ."

 In *People* v. *Hewlett,* 108 Cal.App.2d 358, the court said at page 367 [239 P.2d 150]:

". . . The elements of an embezzlement are:

"(1) The accused must be the agent or bailee of the prosecuting witness in holding the allegedly embezzled property;

"(2) the property must actually belong to the alleged principal;

"(3) it must be lawfully in the possession of the accused at the time of the alleged embezzlement;

"(4) the accused must have been guilty of the conversion which the statute denounces; and

"(5) there must be shown an intent on the part of the accused to deprive the owner of his property unlawfully. (*People* v. *Cannon,* 77 Cal.App.2d 678, 689 [176 P.2d 409].)"

 The property which was sold to the Bielkes was part of the property which had been acquired by the union from the American Legion, as hereinbefore set forth. When it became the property of the union appellant and the other

officers of the union were, by virtue of their positions, trustees in regard to it. Since appellant as an officer of the union, with the other officers, had the property under his control, whether or not he, or the other officers, had the authority to sell the property, appellant would be guilty of embezzlement if he was instrumental in the sale of the property sold and pocketed part of the proceeds, regardless of the fact that the intent to pocket part of the proceeds may have been formed before the sale of the land was consummated. As stated in *Leonard* v. *State*, 7 Tex.App. 417, 444, ''[N]otwithstanding the appellant may have had authority to make a sale of the cotton alleged to have been embezzled, yet if he sold the same with the formed intention to defraud the owner, and to convert it to his own use and benefit, he is as much guilty of embezzlement of the cotton as if he had no authority to make such sale. What is embezzlement? A fraudulent appropriation of the property of another, by a person to whom it has been entrusted. There is no settled mode by which this appropriation must take place, and it may occur in any one of the numberless methods which may suggest itself to the particular individual. The mode of embezzlement is simply matter of evidence, . . . .''

The evidence in the instant case discloses that appellant was the one who instructed Doran as to the price to be received, the price to be paid to the union, and the amount to be withheld. This was clearly an attempt to appropriate funds which rightfully belonged to the union. The evidence disclosed that appellant was in charge of all the financial records of the union and that nothing out of the ordinary was done without his approval. He certainly was a trustee as to the union funds and any union property. His scheme as disclosed by the evidence would be embezzlement whether based on conspiracy with the other officers or on individual action. The fact that a sale of the property was the means by which the deed was accomplished would not make the crime larceny since the whole scheme was one to convert the real estate to cash so that the fraudulent appropriation could be accomplished.

We are not impressed with appellant's argument that the evidence does not support his conviction of embezzlement but that it would only support a finding that appellant was guilty of larceny. The authorities relied upon by appellant do not support his contention, and it would serve no useful purpose to discuss them. We are convinced that under the code sec-

tions defining embezzlement and the authorities hereinbefore cited, the evidence in the instant case clearly supports appellant's conviction of embezzlement. Where, as in the instant case, an official of the union has control of property and directs the making of a sale of certain real property of the union and appropriates to his own use part of the proceeds of the sale, he is guilty of embezzlement.

 The remaining contention made by the appellant concerns the introduction of certain exhibits into evidence. The first concerns ledger sheets which the bookkeeper stated showed the accounting records on the funds disbursed and received on the Stockton property. The second concerns certain financial statements which showed the purchase and sale of the Stockton real estate. Appellant contends that no evidence was introduced to show that these records were made under his direction and control. Appellant relies on the rule that books and records kept by third persons are not admissible against a defendant in a criminal action without proof that the entries were made by or under the direction of the defendant or with his knowledge. (See *People* v. *Doble,* 203 Cal. 510 [265 P. 184].) The appellant himself testified that he was in direct supervision of the bookkeeper. Only appellant received the financial statements which were prepared by the bookkeeper. He had to authorize all checks out of the ordinary before they were prepared. Appellant at times asked about items that appeared in the financial statements. This would be sufficient to meet the test of the Doble case. In any event the records would be admissible under the provisions of the Uniform Business Records as Evidence Act to show how much the union received on each sale of the Stockton property. (See Code Civ. Proc., § 1953f.)

The judgment and order are affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied October 29, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 10, 1959.

---

*Assigned by Chairman of Judicial Council.