**In re Rickey Martin AJOOTIAN and Gail Ajootian, husband and wife, dba Ajootian Properties # 1, dba Vintage Apartments, fdba J & M Mercantile & Paints, Debtors.**

**Rickey Martin AJOOTIAN, et al., Plaintiffs,**

v.

**LAMONT LIONS CLUB, etc., et al., Defendants.**

**Bankruptcy No. 188–00826–A–11.
Adv. No. 190–0049.**

United States Bankruptcy Court, E.D. California.

Sept. 5, 1990.

Brett L. Price, Bakersfield, Cal., for debtors.

Thomas C. Fallgatter, Bakersfield, Cal., for Lamont Lions Club.

Carol D. Mills, Frandzel & Share, Fresno, Cal., for Resolution Trust Co.

Gary Dyer, Office of the United States Trustee, Fresno, Cal.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

## INTRODUCTION

On March 7, 1988, Rickey Martin Ajootian and Gail Marie Ajootian, as husband and wife, doing business as Ajootian Properties #1 and the Vintage Apartments, filed for relief under Chapter 11 of the

Bankruptcy Code.[1] On March 6, 1990, Debtors, through their attorney, Brett Price, filed a Complaint to Determine the Validity, Priority and Extent of Liens and Other Interests in Real Property and to Quiet Title. A Summons was issued on the same date and served upon the Defendants, Lamont Lions Club ("Lions Club") and First Federal Savings and Loan of Bakersfield ("First Federal"), on March 8, 1990. The Lions Club, by and through its attorney, Thomas C. Fallgatter, filed its Answer to the Complaint on April 18, 1990. The Resolution Trust Corporation ("RTC"), as conservator for First Federal, by and through its attorney, Carol D. Mills, filed its Answer on April 18, 1990. Subsequent to that date, the RTC amended its Answer on May 2, 1990. The pre-trial in this matter was heard by this Court on July 2, 1990, with a Status Conference continued to July 25, 1990, in Bakersfield. In attendance on July 2, 1990, were Gary Dyer on behalf of the United States Trustee's Office, Brett Price for the Debtors, Carol Mills for the RTC and Karen Dale on behalf of the Lions Club.

On July 20, 1990, the RTC, by and through its attorney, Carol Mills, filed a Notice and Motion for Substitution of Party. The purpose of this Motion was to substitute the RTC as receiver for First Federal as the real party in interest in this action. The Motion came before the Court on August 23, 1990, and there being no opposition, the Court granted the Motion of the RTC to substitute in as the real party in interest.

On August 1, 1990, the RTC filed a Motion for Summary Judgment seeking a determination that the Trust Deed recorded May 30, 1986, in Book 5878, commencing at page 20–21 in the Kern County Recorder's Office constituted a valid, perfected first priority lien against the real property commonly known as 10401 San Diego Street, Lamont, California, in the amount of $1,403,883.10 as of July 20, 1990. The Lions Club contends it conveyed the property to the Debtors in return for the Debt-

ors' promise to perform certain acts. As the Debtors failed to perform, the Lions Club asserts the Debtors must reconvey to them to the exclusion of RTC's lien.

The Motion for Summary Judgment was brought pursuant to Federal Rule of Civil Procedure Rule 56, Bankruptcy Rule 7056, and Local Rule 3, parts A and B. The basis of the Motion was that there was no information in the Kern County Recorder's Office at the time the loan was made to the Debtors by First Federal disclosing any interest of the Lions Club in the subject real property. Further, there was no such information disclosing any interest whatsoever of the Lions Club in the public records until after all loan proceeds had been disbursed. The RTC also contends that the books and records of the failed savings and loan institution disclosed that First Federal had no knowledge of any interest whatsoever of the Lions Club in the subject property. The RTC contends that under both Federal and California state law, any interest claimed by the Lions Club in the subject property is unenforceable and invalid as to the RTC's claim. The RTC states that 12 U.S.C. § 1823(e) defeats any interest whatsoever of the Lions Club. Moreover, under the recording statutes of the State of California, any interest claimed by the Lions Club is junior to that interest held by the RTC as receiver of First Federal.

Oppositions to RTC's Motion for Summary Judgment were filed August 16, 1990, by both the Debtors and the Lions Club. The Lions Club opposed the RTC's Motion for Summary Judgment on the grounds that First Federal had both actual and constructive notice of the agreement between the Debtors and the Club. Additionally, the Lions Club asserts that the D'Oench Doctrine, as statutorily embodied in 12 U.S.C. § 1823(e), is inapplicable in this instance. The Lions Club contends that a triable issue of fact exists respecting First Federal's actual and constructive knowledge of the agreement between the Debtors and the Lions Club.

---

**1.** All references to the "Code" refer to the Bankruptcy Code as revised by the 1984 revisions unless otherwise noted.

Debtors' Opposition raised a number of issues. Initially, Debtors assert that the RTC may be without standing to bring the Motion for Summary Judgment. Secondly, Debtors indicate that the Motion itself was premature as discovery was still pending. The primary objection asserted by the Debtors is as to the amount owed under the loan. It is the Debtors' contention that a genuine dispute exists as to the outstanding balance of principal, interest, penalties, and other charges which may be claimed due under the lending agreements; the amount of any set-offs or offsets, payments, and any other credits connected with the loan; and that First Federal, by its refusal to fund the final two phases of the apartment project, breached its lending agreement and should be held accountable in damages to the Debtors.

These matters (the Motion for Substitution of the RTC in as the real party in interest for First Federal; the Motion for Summary Judgment by the RTC and the Oppositions thereto; and the Lions Club's Motion to Continue the Motion for Summary Judgment) came on calendar on August 23, 1990. At this hearing, Brett Price appeared for the Plaintiffs/Debtors, Thomas Fallgatter appeared on behalf of the Defendant Lions Club, and Carol Mills appeared on behalf of the Moving Party, RTC.

The following shall constitute this Court's Findings of Fact and Conclusions of Law. Jurisdiction exists pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (2). Several issues are in dispute in this matter. The Court will again address the standing issue and the continuance issue and then will look to the issues raised by RTC's Motion for Summary Judgment and the Oppositions thereto.

## FACTS SURROUNDING THE TRANSFER OF PROPERTY

The Lions Club entered into an agreement with the Debtors in the fall of 1984 providing for the transfer of the subject property in consideration for the Debtors' commitment to build a club house for the Lions Club on the property. As further consideration for the transfer of this property, the Debtors were to lease the club house to the Lions Club for 99 years at a rate of $1.00 per year and to pay the Club $5,000.00 annually for 10 years. Additionally, Debtors were to build 128 low to moderate income apartments on the property, and under the terms of the agreement, the aforementioned was to be completed within 30 months of the transfer. If the terms of the agreement were not completed within 30 months of the transfer, the agreement called for the reconveyance of the property back to the Lions Club. These terms are set out in *unsigned* escrow instructions dated November 28, 1984, submitted to the Court as an exhibit to the Declaration of Deryl Stine. One purpose of building the club house on the property, to be called the "Lions Den," was that it would be available for community events. The property was initially deeded to the Lions Club by the Lamont Fall Festival Association and held for the benefit of the Community of Lamont. As indicated in the Stine Declaration, the transfer of property to the Debtors was without advice of counsel and amounted to nothing more in this Court's eye than a handshake and a promise for the Debtors to perform under the agreement. As Stine states, "We felt we were carrying out our obligations to the community because we felt the club house would be a valuable addition to the community." The facts indicate that 30 months came and passed, at which time only the first phase of the apartments were completed, leaving phases two and three to still be constructed. Moreover, the Lions Den was never begun or completed. The Lions Club asserts that the Debtors breached their agreement and that the Lions Club is entitled to a reconveyance of the property. The Debtors claim that First Federal breached its contractual obligation with them by refusing and failing to provide adequate construction loans with which to complete construction of the final two phases of apartments and the Lions Den. It is upon these facts that the Court must make its decision.

ANALYSIS

Summary Judgment is a method for promptly disposing of actions in which no genuine issue of material fact exists. It serves to avoid trial where the Moving Party is entitled to judgment as a matter of law. *Bloom v. General Truck Drivers, Office Food and Warehouse Union, Local 952*, 783 F.2d 1356, 1358 (9th Cir.1986); *IBEW, Local 47 v. Southern California Edison Co.*, 880 F.2d 104, 105–106 (9th Cir.1989). To prevail, the Moving Party must establish by affidavit, pleadings, or answers to discovery, that no genuine issue as to any material fact exists and that the Moving Party is entitled to a judgment as a matter of law. Federal Rules of Civil Procedure Rule 56, Bankruptcy Rule 7056; see also *IBEW, Local 47, supra. In re Tilbury,* 74 B.R. 73, 76 (9th Cir.B.A.P.1987); *In re Stephens*, 51 B.R. 591, 594 (9th Cir.B.A.P.1985). The mission of Summary Judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. Evidence on Motion for Summary Judgment shall be viewed in a light most favorable to the non-moving party and any doubt as to the existence of genuine issues of fact will be resolved against the Moving Party. *IBEW, Local 47, supra; M/V American Queen v. San Diego Marine Construction*, 708 F.2d 1483, 1487 (9th Cir. 1983); *Arizona Laborers, Etc. v. Conquer Cartage Co.*, 753 F.2d 1512, 1515 (9th Cir. 1985). Should the Court determine that no genuine issue for trial exists and that the Moving Party is entitled to judgment as a matter of law, Summary Judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Debtors preliminarily state that the RTC may not have standing as a proper party to bring the Motion for Summary Judgment. This Court holds that the RTC, as receiver for First Federal, is the real party in interest and therefore entitled to enforce any and all causes of action of the Bank in receivership. *First State Bank v. Bank of America*, 618 F.2d 603 (9th Cir. 1980). Accordingly, RTC has standing to bring this Motion for Summary Judgment. See Federal Rule of Civil Procedure 17(a).

Respecting the Lions Club Motion to Continue the RTC's Summary Judgment Motion, this Court finds and holds that the Lions Club has failed to specifically state the need to continue this hearing. Under Federal Rule of Civil Procedure 56(f), the Lions Club has not stated reasons by affidavit setting forth "facts essential" to justify a continuance of this Motion. Accordingly, the Motion to Continue the RTC's Motion for Summary Judgment is denied. Orders granting the Motion authorizing the RTC to substitute in as the real party in interest and denying the Motion for Continuance have been signed and are on file with the Court.

Remaining for determination is whether, as a matter of law, any agreement entered into between the Debtors and the Lions Club affects the RTC's interest in or ability to foreclose on the subject property. The RTC contends that any such agreement is unenforceable against them, as receiver, under Federal law as set out in 12 U.S.C. § 1823(e).

12 U.S.C. § 1823(e) states:

"No agreement which tends to diminish or defeat the interest of the corporation in any asset acquired by it under this section or section 1821 of this Title, either as security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the corporation unless such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution, or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

■ 12 U.S.C. § 1823(e) is the statutory embodiment of *D'Oench Duhme and Company v. FDIC*, 315 U.S. 447, 62 S.Ct. 676,

86 L.Ed. 956 (1942). The *D'Oench* doctrine protects acquiring corporations against collusive secret deals typically between bank officers and borrowers. It entitles the acquiring corporation, in this instance the RTC, to rely on the bank's loan documents and records essentially as a holder in due course. Signed agreements must strictly comply with the statute; otherwise they are unenforceable. See *In re Figge*, 94 B.R. 654, 668 (C.D.Cal.1988); citing *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

One purpose of § 1823(e) is to allow the federal and state bank examiners to rely on bank records in evaluating the worth of the bank's assets. *Langley, supra.* Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities and when deciding whether to liquidate a failed bank or to provide financing for purchase of its assets and assumption of its liabilities by another bank.

When evaluating whether to liquidate a failed bank or to provide for the purchase of its assets and assumption of its liabilities by another institution, the acquiring corporation (RTC) must do so "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid interruption in banking services." *Langley, supra,* citing *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982).

■ Clearly, under § 1823(e), no agreement will be valid against the acquiring corporation unless each of the four requirements as set forth in the statute are complied with. In determining the scope of the statute, one first looks at its language. *North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983). Where the language is unambiguous, it ordinarily is regarded as conclusive unless there is "a clearly expressed legislative intent to the contrary." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). *Langley, supra,* clearly sets forth the legislators' intent that the acquiring corporation be able to act swiftly to take action to preserve the going concern value of the failed

bank. Any agreement then tending to diminish or defeat the interest of the corporation must necessarily comply with the requirements set forth under § 1823(e). To determine if Summary Judgment is appropriate in this instance, this Court must examine each of those elements contained within § 1823(e).

■ The key wording of the statute is: "*No agreement* which tends to diminish or defeat ... *shall be valid against* the corporation *unless ...*" The phrase "No agreement" is quite expansive and consistent with the intent to allow the acquiring corporation to take swift action in the best interest of the failed savings and loan institution. This is the clear and unambiguous intent of the statute. Any other interpretation would be contrary to the clear language of the statute and at variance with the expressed legislative intent.

Looking to the first requirement, the Lions Club submitted, attached to the Stine Declaration as evidence, an exhibit dated November 27, 1984, entitled "Buyer's Escrow Instructions." These Escrow Instructions, although unsigned but prepared for signature by the Debtors and the Lions Club, set forth that within 30 months after the date of close of escrow, the buyer/debtor will build and complete a building for use as the Lions Den with a fair market value of not less than $160,000.00 nor more than $175,000.00 at the time of completion. The conveyance of property was not for any dollar sum but, rather, was subject to the terms set forth within the escrow instructions. One term was that should the Debtors fail to complete the specified building, the Debtors would reconvey the property back to the seller/Lions Club. Further, for the record, it is to be noted that Lions Club did not submit into evidence any recorded conveyance of the property to the Debtors setting forth these terms. The evidence also indicates that pursuant to title searches performed prior to issuance of the loan by First Federal, the alleged interest of the Lions Club was not of public record. Although the writing submitted by the Lions Club is unsigned, the Court in viewing evidence most favorable to the

nonmoving party in Summary Judgment matters will assume with respect to this requirement that a writing did in fact exist. Accordingly, the first element required to diminish or defeat the interest of the RTC under § 1823(e) has been satisfied.

The second requirement is that the depository institution and any person claiming an adverse interest in the asset, including the obligor, execute contemporaneously with the acquisition of the asset by the depository institution an agreement setting forth such adverse interest therein. As admitted by the Lions Club attorney at oral argument, there was no contemporaneous agreement to this effect executed between First Federal and the Lions Club. The only agreement that existed was the agreement between the Debtors and the Lions Club. For any agreement to diminish or defeat the interest of the RTC in the subject property, that agreement must have been contemporaneously executed between First Federal and the person claiming that adverse interest upon First Federal's acquisition of the asset. Accordingly, respecting the second element under 12 U.S.C. § 1823(e), this Court finds and holds that there exists no agreement contemporaneously executed by and between First Federal and the Lions Club as to the Lions Club's adverse interest in the subject property. As all elements under § 1823(e) are to be read in the conjunctive, Lions Club cannot prevail under this statute.

The Court wishes to point out that the record also reflects that the minutes of First Federal's Board of Directors' meetings are devoid of any mention of the existence of the Lions Club's interest in the property. Nor has there been, continuously, from the time of its execution an official record of the Lions Club's interest in the records of the depository institution. No evidence was submitted indicating compliance with § 1823(e)(3) and (4). These facts clearly show that the requirements needed to defeat the interest of the RTC have not been complied with. Accordingly, the RTC is, as a matter of law, entitled to Summary Judgment.

■ The Lions Club contends that the D'Oench doctrine codified by 12 U.S.C. § 1823(e) is inapplicable here as it was intended to relate only to side agreements between the failed lending institutions and borrowers. The Court is aware of the decision in *Slappey Builders, Inc. v. FDIC*, 157 Ga.App. 343, 277 S.E.2d 328, where the Court held that the *rigid* criteria of 12 U.S.C. § 1823 apply only as to side and/or secret agreements between the debtors and insolvent insured banks and not to any other direct agreements between debtors and the FDIC after having purchased the assets of the failed bank. This is precisely the position the Lions Club asserts respecting their agreement with the Debtors. While recognizing that the majority of case law addresses situations where the agreements at issue were between the depository institution and obligor/debtors, this Court holds such a constricted interpretation of this statute to be inconsistent with the breadth of its language. "No agreement" is, by its nature, very broad. To defeat the acquiring corporation's interest requires a writing executed by the depository institution *and any person, including the obligor.* The language "... and any person, including the obligor ..." mandates that *any* person holding an interest that could diminish or defeat the acquiring corporation's interest fulfill all of the requirements set forth in the statute. This applies to *any* agreement, not just those between the depository institution and the obligor/debtor. This is the clear mandate of the statute. Such an interpretation is also consistent with the legislative intent as set out in *Langley, supra,* allowing acquiring corporations such as the RTC to make a determination as to the extent and value of a failed lending institution's assets and to move with great speed in order to preserve the going concern value of the failed institution.

■ The Lions Club also advances several theories under California law supporting their position. First, they assert that First Federal had constructive notice of their agreement by virtue of the documents recorded in 1970 whereby the Lamont Fall Festival Association conveyed the subject

real property to the Lions Club for a charitable/public purpose. The Lions Club states that First Federal, under California law, is charged with the responsibility to determine that the "public trust" obligations had been fulfilled as First Federal had notice of the trust.

The Lions Club also asserts that First Federal had actual knowledge of the agreement between the Debtor and the Lions Club. They assert that under California law, First Federal cannot be a bona fide purchaser without notice.

Additionally, Mr. Fallgatter argued, by analogy, that where a mechanic's lien attached to the property, absent compliance with § 1823(e), the workman's lien would be expunged.

While these arguments have a certain sense of appeal and potential merit under state law (but noting that California is a race/notice jurisdiction requiring *both* notice and recordation to perfect an interest in property), they miss the issue at hand regarding this Federal statute. Although not raised by any party, this case has Constitutional underpinnings.

The import of the Supremacy Clause set out in Article VI of the United States Constitution and the preemption doctrine is that federal law shall be the "supreme law of the land" and shall enjoy legal superiority over any conflicting provision of a State Constitution or law. This Court finds and holds that an actual conflict in this instance exists between a federal statute and state laws, and by virtue of the pre-emption doctrine, the Lions Club's contentions founded on California law are moot in the face of 12 U.S.C. § 1823(e).

Precluding the RTC from exercising its Federal statutory right because of inconsistent state law claims runs against the grain of the pre-emption doctrine and the mandates of the United States Constitution. Accordingly, this Court holds that the state law claims asserted by the Lions Club raise no issue of material fact. Summary Judgment in favor of the RTC against the Lions Club is appropriate as no triable issue of material fact exists, and, as a matter of law, the RTC is entitled to judgment.

■ Lastly, addressing the issue of the dollar amount owing to the RTC, conflicting information has been submitted to the Court for review. One of the Debtors, on two occasions, has testified to different amounts and potential set-offs. This Court cannot, as a matter of law, determine the amount owing, if any. This Court finds and holds that a triable issue of material fact exists as to the dollar amount owing to the RTC, and, therefore, this matter must be set for further hearing.

## CONCLUSION

In part, the legislative intent behind 12 U.S.C. § 1823(e) is to allow the corporation acquiring a failed depository institution to move swiftly to determine the nature and extent of assets and liabilities so as to preserve its going concern value. Because of the swiftness with which the acquiring corporation must move, this Court holds that *any agreement* that will adversely affect the rights of the acquiring corporation must comply with the strict rules as set forth within 12 U.S.C. § 1823(e). The agreement between the Lions Club and the Debtors would tend to diminish or defeat the RTC's interest, and the failure of that agreement to comply with the mandates under § 1823(e) is fatal to the position of the Lions Club against the RTC.

Moreover, in that potential state law claims might exist which would render the RTC's position ineffective against the Lions Club, these claims are rendered moot as against the RTC under the pre-emption doctrine and the Supremacy Clause of the United States Constitution. To allow them to stand and defeat the RTC's claim under the federal statute would be contrary to the Constitution itself and the doctrine of pre-emption.

The Court will not address the issue of whether the Lions Club has recourse against the Debtors as that issue is not before the Court pursuant to RTC's Motion for Summary Judgment.

Respecting the dollar amount owing to the RTC, this Court holds that a triable issue of fact exists. Evidence exists making this matter most appropriate for further hearing. Accordingly, Summary Judgment with respect to that issue must be denied and the matter set for further hearing to determine the dollar amount owing.

## JUDGMENT

Based upon the accompanying Analysis, Findings of Fact, and Conclusions of Law, IT IS ORDERED AS FOLLOWS:

1. That the Resolution Trust Corporation's Motion for Summary Judgment is granted in part determining the Lamont Lions Club's interest in the real property commonly known as 10401 San Diego Street, Lamont, California, to be junior, unenforceable, and invalid as to the Resolution Trust Corporation's interest in the same.

2. Further, that the Resolution Trust Corporation's Motion for Summary Judgment as to the dollar amount owing on its claim by the Debtor is denied as a triable issue of fact exists as to that amount.

3. Further, that Carol D. Mills, counsel for the Resolution Trust Corporation, shall, within fourteen (14) days of service of this Order, contact opposing counsel and determine, and set with this Court for a telephone conference call, a mutually convenient date for a further status hearing on the remaining issues to be tried.