783 F.2d 1356
 121 L.R.R.M. (BNA) 3008, 104 Lab.Cas. P 11,831
 Warren BLOOM, Plaintiff/Appellant,
v.
GENERAL TRUCK DRIVERS, OFFICE, FOOD & WAREHOUSE UNION, LOCAL
952; William Montgomery; Donald Cochran; Manuel
Lopez; Gerold Scott, Defendants/Appellees,
and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Defendant.
 No. 84-6620.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1985.
Decided Feb. 28, 1986.
 
 Edward L. Smilow, Orange, Cal., for plaintiff/appellant.
 Hirsch Adell, Los Angeles, Cal., for defendants/appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SKOPIL, FLETCHER and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Appellant Warren Bloom seeks reversal of summary judgments against him in his action against his former union and its officers alleging wrongful discharge, breach of fiduciary duty, and violation of his rights as a union member under section 101(a)(1) of the Labor-Management Reporting and Disclosure Act (LMRDA or the Act) (29 U.S.C. Sec. 411 (1982)). On appeal, Bloom argues that his complaint states a claim under the Act, that he may maintain a cause of action under state law, and that the individual defendants should be held liable for their actions. We affirm.
 
 FACTS
 
 2
 Appellant Warren Bloom joined the General Truck Drivers, Office, Food & Warehouse Union, Local 952 (Local) in 1947. In 1963, he was hired by then-Secretary-Treasurer Lee Kearney as a business agent for the Local. Business agents have significant policymaking responsibility in the negotiation of contracts and in processing and resolving grievances. Under the Local's bylaws, only the Secretary-Treasurer has the power to hire or fire business agents. Kearney also appointed Bloom coordinator of the business agents. During the time involved here, Bloom also held the elected post of Recording Secretary, a post whose duties included attending meetings of the Executive Board and taking and storing minutes of all proceedings of the Local.
 
 
 3
 In early 1982, Kearney retired as Secretary-Treasurer and recommended Bloom to the Executive Board as his successor. The Board's initial vote to fill the position ended in a tie. A week later, the Board voted again, and defendant William Montgomery defeated Bloom. Following his election, Montgomery removed Bloom as business agent coordinator.
 
 
 4
 Four months later, Bloom (in his capacity as Recording Secretary) recorded a donation of $150 in the minutes of an Executive Board meeting. The donation was for a Boy Scouts of America luncheon the following day. Tickets for the luncheon were $150 each. The following day, a check for $300 was drawn to purchase two tickets to the luncheon, and defendants Donald Cochran and Manuel Lopez attended. The Executive Administrator, defendant Gerold Scott, in authority because of Secretary-Treasurer Montgomery's hospitalization, believed that Bloom had erred in recording the amount of the donation. A search was made for Bloom that morning but he could not be found. The minutes were subsequently altered to reflect a $300 donation. Bloom later signed the altered minutes but protested that they were incorrect. Bloom made his own investigation of the circumstances of the alteration and, on June 18, wrote a strongly worded letter of protest to the Board.
 
 
 5
 At the next Executive Board meeting, held July 13, 1982, Bloom's original figure of $150 was approved in the minutes for the previous meeting, and the Board voted unanimously to donate another $150 to the luncheon. Bloom was present, voted for the motion, and recorded its passage in the minutes.
 
 
 6
 Nine days later, Montgomery fired Bloom from the position of business manager. Montgomery believed Bloom intended to run against him in the 1983 election.
 
 
 7
 On April 25, 1983, Bloom filed the initial complaint in the current action. On January 13, 1984, pursuant to stipulation, Bloom filed a first amended complaint, naming the Local, the Teamsters, Montgomery, Cochran, Lopez, and Scott as defendants. On September 25, 1984, the district court granted summary judgments to defendants Local, Montgomery, Cochran, Lopez, and Scott on the grounds that Bloom had failed to state a claim under 29 U.S.C. Secs. 411 and 412 and that the pendant state wrongful discharge action was preempted.
 
 
 8
 On November 20, 1984, final judgment was entered against Bloom and in favor of defendants Local, Montgomery, Cochran, Lopez, and Scott. That same day, the district court judge filed an order vacating the judgment and reentering it in accordance with Federal Rule 54(b) to allow immediate appeal. Bloom and the remaining defendant, Teamsters, have stipulated to a stay pending this appeal, the issues between them being derivative from and dependent on any decision here. Bloom has agreed to dismiss the action against Teamsters if the result of the appeal is not favorable to him.
 
 Standard of Review
 
 9
 This court reviews the district court's grant of a summary judgment de novo. See e.g., Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir.1985). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Arizona Laborers Local 395 Health & Welfare Fund v. Conquer Cartage Co., 753 F.2d 1512, 1515 (9th Cir.1985); Fed.R.Civ.P. 56(c).
 
 DISCUSSION
 I.
 
 10
 Labor-Management Reporting and Disclosure Act
 
 
 11
 Appellant Bloom asserts in his brief that the expenditure of $300 on the luncheon when the Local membership had voted only $150 violated his rights to free speech and participation as a union member under 29 U.S.C. Sec. 411(a) (1982),[1] giving him a cause of action under 29 U.S.C. Sec. 412 (1982).[2] Notwithstanding the posture of his brief, however, Bloom actually bases his complaint on his firing as business agent for the Local, not on the expenditure of the $300. All the relief requested in his first amended complaint relates to the loss of his job; none of it deals with the alleged $150 excess donation. (Indeed, any harm from that donation was remedied at the Executive Board meeting following the donation, when the entire Board voted to donate the additional $150.) In short, the relief sought would do nothing to remedy the "infringement" that Bloom argues is the substance of his LMRDA claim.
 
 
 12
 Bloom frames his argument around the "excess" donation in an attempt to fall within the terms of the LMRDA; the action he actually complains of (his discharge) was not intended to be prohibited by the Act. Finnegan v. Leu, 456 U.S. 431, 436-37 & n. 7, 102 S.Ct. 1867, 1870-71 & n. 7, 72 L.Ed.2d 239 (1982) (citing legislative history). A union employee who is discharged in a way that does not affect his rights as a union member has no cause of action under section 412. Id. at 440-42, 102 S.Ct. at 1872-74.[3] Bloom's discharge from union employment does not alone affect those rights. After his discharge, he retained all the rights and privileges of union membership he had had before. An indirect burden on membership rights, such as a forced choice between expressing one's opinion and losing one's job, is insufficient to state an LMRDA claim. See Finnegan, 456 U.S. at 440-42, 102 S.Ct. at 1872-74; Cehaich v. International Union, U.A.W., 710 F.2d 234, 238 (6th Cir.1983). Without some infringement on his rights as a union member, Bloom does not state an action under sections 411 and 412, despite his artful pleading.[4]
 
 II.
 Wrongful Discharge
 
 13
 Bloom also argues that the district court erred in granting summary judgment for the defendants on his state law claim of wrongful discharge.[5] He alleges that he was fired not for political reasons but because he resisted pressure to falsify the union's minutes, and that he therefore has a cause of action for wrongful discharge under state law. The district court ruled that federal law preempted his state claim.
 
 A. Preemption Issue
 
 14
 Bloom first argues that his wrongful discharge action cannot be preempted by the LMRDA because it is specifically "saved" from preemption by the Act itself. He cites 29 U.S.C. Secs. 413, 523, and 524, which he asserts "save" his state claim.[6] Sections 413 and 523(a), however, save causes of action enjoyed by union members, and, as discussed above, Bloom is not bringing this action as a union member but as a union employee. Just as he is not entitled to the substantive protections of the LMRDA as an employee, so he cannot enjoy its savings clauses. The remaining section, 29 U.S.C. Sec. 524, saves only state criminal laws and thus cannot directly save appellant's civil action.[7]
 
 
 15
 Even if his state claim is not specifically saved from preemption, Bloom argues that the district court erred in finding preemption on the facts alleged in his complaint. No federal statute directly covered the terms and conditions of Bloom's employment and, he correctly notes, he was an at-will employee under California law.
 
 
 16
 Federal labor law preemption of state law is a complex and difficult area of the law. Because the statutes are largely silent as to what aspects of state law Congress intended to preempt, we have developed a preemption doctrine "based on legislative history and judicial conceptions of what federal labor policy requires." Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468, 1473 (9th Cir.1984). Preemption questions clearly require us to balance state and federal interests, although the relative importance attached to each interest is unclear.[8] Id.; Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367, 1372-73 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985).
 
 1. State interest
 
 17
 In the present case, the state's interest is strong. Bloom asserts in his complaint that he was fired for refusing to alter the minutes of a union meeting to cover up an unapproved expenditure (in effect an embezzlement) of union funds by other union officers. California law prohibits embezzlement. See, e.g., Cal. Penal Code Secs. 503, 504, 506 & 508 (West 1970); see also People v. Swanson, 174 Cal.App.2d 453, 344 P.2d 832 (1959) (embezzlement of union funds). California has a strong interest in preventing this crime, and consequently in seeing that employees are not coerced by threat of discharge into committing or abetting the crime. A state cause of action for wrongful discharge based on refusal to submit to such coercion is a necessary deterrent to both the coercion and the crime itself. See Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 188-89, 344 P.2d 25, 27 (1959).[9] If federal labor law preempts such a cause of action, the deterrent effect is lost and nothing prevents unscrupulous employers from forcing employees to choose between committing crimes and losing their jobs.[10]
 
 
 18
 Moreover, the Act itself explicitly saves both state criminal actions[11] and state-imposed responsibilities of union officers[12] from preemption by the Act. The continued vitality of the California statutes in light of these saving clauses logically implies the continued vitality of the state's means of enforcing those statutes, including, as here, a cause of action for wrongful discharge for refusal to acquiesce or abet in the statutes' violation. Thus, although the savings clauses addressing union members do not directly save Bloom's state cause of action, as discussed above, the clauses addressing criminal actions and union officers' duties imply that Bloom can maintain his action. Having established a strong state interest and implicit approval of Bloom's cause of action in the Act, we must determine if any interest of federal labor policy precludes Bloom's cause of action.
 
 2. Federal interest
 
 19
 The LMRDA addresses various aspects of the abuse of power by union leaders. Title I of the Act, 29 U.S.C. Secs. 411-15 (1982), provides, among other things, equal rights, freedom of speech and assembly, and safeguards against improper disciplinary action for union members. See 29 U.S.C. Sec. 411 (1982). These rights clearly aim at promoting union democracy and at making democratically elected union leaders responsive to the wishes of their memberships. Finnegan v. Leu, 456 U.S. 431, 441-42, 102 S.Ct. 1867, 1873-74, 72 L.Ed.2d 239 (1982); see Cehaich v. International Union, U.A.W., 710 F.2d 234, 239 n. 9 (6th Cir.1983); see also 29 U.S.C. Sec. 401 (1982) (congressional statement of purpose and policy). This responsiveness requires a degree of power and autonomy, and "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." Finnegan, 456 U.S. at 441, 102 S.Ct. at 1873. The federal interest in promoting union democracy and the rights of union members, therefore, includes an interest in allowing union leaders to discharge incumbent administrators.[13]
 
 
 20
 We need not decide, however, whether allowing a state cause of action for wrongful discharge would generally undermine this federal interest and rob the union leader of discretion needed to serve the wishes of the membership and thus the purposes of the Act. See Tyra v. Kearney, 153 Cal.App.3d 921, 926-27, 200 Cal.Rptr. 716, 719-20 (1984) (holding that a state claim for wrongful discharge was preempted by the LMRDA and the Supreme Court's decision in Finnegan).[14] In the present case, Bloom alleges that he was fired, not for political reasons, or for no reason at all, but rather because he refused to illegally alter the minutes of a union meeting. Not only is the state's interest in allowing the wrongful discharge action here strong, as discussed above, but the federal interest is much lessened under these circumstances. The kind of discharge alleged, retaliation for refusal to commit a crime and breach a trust, is not the kind sanctioned by the Act, or by the courts in Finnegan and Tyra. Protecting such a discharge by preempting a state cause of action based on it does nothing to serve union democracy or the rights of union members; it serves only to encourage and conceal such criminal acts and coercion by union leaders.
 
 
 21
 In Tyra and Finnegan, the discharge of the employee was central to the concerns of federal labor policy, and a state cause of action would have interfered with the federal regulatory scheme. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977). The subject of the suit here is merely peripheral to the concerns of the Act, see, e.g., Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 59-63, 86 S.Ct. 657, 661-663, 15 L.Ed.2d 582 (1966) (charge of libel not central to NLRA concerns), and a state cause of action would not interfere with federal policy at all.[15]
 
 
 22
 Furthermore, the state cause of action actually advances the purpose of the Act. Title V of the Act prohibits the very acts of embezzlement and imposes the very fiduciary duties addressed by state law and alleged here by Bloom. 29 U.S.C. Sec. 501 (1982). The Act, however, lacks any mechanism for preventing the coercive firings that might aid violation of those provisions. The state cause of action for wrongful discharge for refusing to violate the provisions is therefore a useful adjunct to federal as well as state law.
 
 
 23
 In conclusion, we find that the district court applied Tyra overbroadly and erred in finding Bloom's wrongful discharge action was preempted. Where, as here, a union employee bases a wrongful discharge action on allegations that he was fired for refusing to violate state law, that cause of action is not preempted by the federal labor policies reflected in the LMRDA or Finnegan v. Leu.
 
 B. Merits
 
 24
 Although the state wrongful discharge action is not preempted, the appellees are nonetheless entitled to summary judgment because Bloom has raised no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. See Arizona Laborers Local 395 Health & Welfare Fund v. Conquer Cartage Co., 753 F.2d 1512, 1515 (9th Cir.1985); Fed.R.Civ.P. 56(c). Although the district court judge did not specifically make this finding, her statement of uncontroverted facts justifies such a conclusion.[16]
 
 
 25
 Bloom contends that there is a legitimate dispute about the reason for his discharge. This assertion is not sufficient to withstand a summary judgment motion, however. The evidence in the record and the declaration offered by the defendants compel Bloom to come forward with some support for his assertions. Westside Property Owners v. Schlesinger, 597 F.2d 1214, 1223 (9th Cir.1979); Fed.R.Civ.P. 56(e).
 
 
 26
 Bloom has not done so; in fact, he has conceded the material facts alleged by the defendants. Bloom does not dispute that he and Montgomery were rivals for the Local leadership, that Montgomery removed Bloom as coordinator of business agents as soon as Montgomery was elected Secretary Treasurer, and that Montgomery believed Bloom was positioning himself to run again. Bloom does not dispute that the firing of political rivals was a commonplace event in the local,[17] nor that his firing was within the power of the Secretary-Treasurer, nor that his firing took place ten days after the meeting that unanimously approved the additional donation and remedied any harm from the disagreement about the minutes. In addition, Bloom himself twice asserted in very strong language (in his deposition and in his letter to the Teamsters president) that the sole reason for his discharge was the political threat he posed to Montgomery.
 
 
 27
 Bloom presented no evidence whatever that suggests his discharge was based on his failure to falsify the minutes. The record reveals only a declaration by Bloom's attorney, attesting to the authenticity of attached copies of documents. These copies include: the cancelled donation check, about which there is no dispute; a verified complaint and declaration in another case, which only serves to document the bloody political infighting surrounding the Bloom/Montgomery election; a wrongful discharge complaint by another Local union employee, of no relevance whatever; financial records purporting to show a loss of $300,000 from cash assets in the first year of Montgomery's administration, also of no relevance here; and a letter from Bloom to the Board, detailing his protest about the alteration of the minutes. Bloom also cited to Montgomery's deposition testimony indicating that at the time Bloom was fired Montgomery questioned Bloom about whether "he changed his mind about the minutes."
 
 
 28
 Of this evidence, the letter to the Board is marginally related to Bloom's allegations of wrongful discharge. Although this letter might otherwise allow an inference that Bloom's discharge was connected with the minutes, the letter is not material in light of the Board's later, predischarge action in approving both Bloom's version of the minutes and the disputed additional donation. Montgomery's deposition testimony that he questioned Bloom about the minutes at the time Bloom was discharged might also marginally support Bloom's claim. This evidence is not sufficient to create an issue of material fact, however, in light of Bloom's concession that Montgomery considered him a political threat, and in light of the undisputed evidence that Bloom was discharged before Montgomery even mentioned the minutes. For these reasons, summary judgment against Bloom was proper.
 
 III.
 The Individual Defendants
 
 29
 Finally, Bloom argues that the individual defendants, Montgomery, Cochran, Lopez, and Scott, should be held liable for their actions. Bloom presents no analysis of why this should be and cites no cases. He merely recites undisputed facts accompanied by assertions that the defendants knew that what they were doing was wrong. Because Bloom fails to give any reason for reversal of the summary judgments for the individual defendants, those judgments must be affirmed.
 
 
 30
 The defendants claim that, for that reason, their very inclusion in the appeal is frivolous and they should be awarded attorney's fees on appeal. Such an award in the present case would be almost entirely punitive. All the defendants involved in the appeal, including the Local, are represented by the same attorney and filed a joint brief, and it is unlikely that significant additional costs were incurred by the inclusion of the individuals. In addition, because the question of federal preemption was of first impression in this circuit and appellant in fact prevailed on the issue, the appeal was not frivolous. For these reasons, we decline to give attorney's fees.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C. Sec. 411(a) reads in relevant part:
 (1) Equal rights.--Every member of a labor organization shall have equal rights and privileges within such organization to ... attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 (2) Freedom of speech and assembly.--Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at the meetings of the labor organization his views ... upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings....
 
 
 [2]
 29 U.S.C. Sec. 412 provides:
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.
 
 
 [3]
 Bloom attempts to distinguish Finnegan by quoting language from the opinion that seems to reserve the question of whether such an action by an employee could ever be brought under section 412:
 We need not decide whether the retaliatory discharge of a union member from union office--even though not 'discipline' under Sec. 609 [29 U.S.C. Sec. 529]--might ever give rise to a cause of action under Sec. 102 [29 U.S.C. Sec. 412].
 Finnegan, 456 U.S. at 440-41, 102 S.Ct. at 1872-73. A careful reading of Finnegan, however, reveals that this reservation is limited to certain personnel:
 We leave open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees.
 Id. at 441, n. 11, 102 S.Ct. at 1873, n. 11 (emphasis added).
 The Finnegan holding is clearly applicable to business agents like Bloom; the plaintiffs in Finnegan were themselves Teamsters local business agents. See also Cehaich v. International Union, U.A.W., 710 F.2d 234, 239 (6th Cir.1983) (holding that the critical question is "whether the employee can correctly be considered an instrumental part of the union administration").
 
 
 [4]
 Bloom arguably alleges some effect on his membership rights following his discharge because he was issued an "Honorable Discharge" card. Nothing, however, links the donation incident, Bloom's discharge, and the issuance of the withdrawal card. The union issued Bloom the withdrawal card after he applied for pensions for which he was eligible. The evidence is undisputed that the union issued that withdrawal card in accordance with the Teamsters' Constitution and the Local's bylaws regarding members who have retired. Therefore, any effect on Bloom's membership rights was caused by Bloom's own application for his pensions, and not by any actions of the defendants
 
 
 [5]
 The district court's jurisdiction over the pendant state claim is not disputed on appeal
 
 
 [6]
 29 U.S.C. Sec. 413 (1982) provides:
 Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization.
 29 U.S.C. Sec. 523(a) (1982) provides in relevant part:
 Except as explicitly provided to the contrary, nothing in this chapter shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State.
 29 U.S.C. Sec. 524 (1982) provides:
 Nothing in this chapter shall be construed to impair or diminish the authority of any State to enact and enforce general criminal laws with respect to robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, or assault which inflicts grievous bodily injury, or conspiracy to commit any of such crimes.
 
 
 [7]
 This savings clause does, however, provide indirect support for an argument against federal preemption. See infra
 
 
 [8]
 As this court has noted before, see Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468, 1474 n. 6 (9th Cir.1984), the most effective suggested approach appears in Cox, Recent Developments in Federal Labor Law Preemption, 41 Ohio St.L.J. 277 (1980). Under this approach, federal labor law preempts only state laws specifically regulating collective activity, not laws of general applicability with only incidental effect on the employment relationship. See id. at 281-82. This approach has been adopted only by a plurality of the Supreme Court. See Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367, 1372-73 & n. 7 (9th Cir.1984) (discussing New York Telephone Co. v. New York Department of Labor, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979)), cert. denied, --- U.S. ----, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985)
 
 
 [9]
 Appellant relies heavily on Petermann, a seminal case in the area of wrongful discharge. In Petermann, a union business agent asserted that his discharge resulted from his refusal to commit perjury before a state legislative committee. 174 Cal.App.2d at 187, 344 P.2d at 26. The court held this assertion sufficient to state a claim of wrongful discharge, despite the at-will nature of the employment contract, because of the public policy against the retaliatory firing. Id. at 188-89, 344 P.2d at 27
 
 
 [10]
 Appellant also claims he was coerced to violate his fiduciary duty as a union officer to the union members by approving misuse of money entrusted to the union, in violation of Cal.Civ.Code Secs. 2228-39 (West 1985), defining the duties and obligations of trustees. It is unclear from the record whether the source of the money involved was legally a trust under state law. Assuming it was, however, the same argument for a strong state interest applies. Just as with embezzlement, California's interest in enforcing its trust laws would be undermined if federal law in effect gave employers freedom to coerce and discharge an employee by preempting an employee's cause of action based on such a discharge
 
 
 [11]
 See 29 U.S.C. Sec. 524 (set out in full supra note 6)
 
 
 [12]
 See 29 U.S.C. Sec. 523(a) (set out in full supra note 6)
 
 
 [13]
 In this case, as in Finnegan, the union's bylaws, adopted and subject to amendment by the union membership, explicitly gives the elected head of the local the power to hire and fire the local's business agents
 
 
 [14]
 Tyra in fact involves a wrongful discharge action brought by a fired business agent of this same union. Tyra was fired by Kearney after the local general election immediately preceding the events in this case
 
 
 [15]
 This distinction also affirms the continued vitality of Petermann, see supra note 8, in light of subsequent federal legislation. Petermann was decided before the Act was in force and thus does not discuss preemption. Nevertheless, in Petermann, as here, the discharged union employee alleged that his firing was the result of his refusal to commit an illegal act, beyond the scope of the protected actions of union leaders under the Act and Finnegan
 
 
 [16]
 This court may affirm on any ground supported by the record below. Davis v. United States, 589 F.2d 446, 448 n. 3 (9th Cir.1979)
 
 
 [17]
 In fact, the winners of both the preceding and the subsequent Local elections for Secretary-Treasurer fired their opponents immediately afterward. Montgomery himself was a victim of the latter discharge