**In re POWERBURST CORPORATION, Debtor.**

**COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

v.

**RG FINANCIAL, LTD., Harold J. Goald, Thomas Parissidi, Richard A. Leibner, E. Gabriel Perle Profit Sharing Plan and Trust, Defendant.**

Bankruptcy No. 92–15384–A–11F.

MC No. KMU–2.

Adv. No. 92–1398.

United States Bankruptcy Court, E.D. California.

April 16, 1993.

Russell D. Greer and Randolf Krbechek, Caswell, Bell, Hillison, Burnside, Greer & Azevedo, Fresno, CA., for defendants.

W. Richard Lee, Kimble, MacMichael & Upton, Fresno, CA, for the Committee.

Riley Walter, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, CA, for debtor.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

### INTRODUCTION

On January 19, 1993, the Committee of Unsecured Creditors, ("COMMITTEE") moved to sever and sought summary judgment on the First, Third, and Eighth claims in this adversary proceeding. After considering the evidence before the Court, argument of counsel, and ruling on the evidentiary objections after considering the Defendants' Response, summary judgment is appropriate as to the Third and Eighth Claims. The granting of summary judgment as to the Third and Eighth Claims renders determination of the First Claim moot and therefore that Claim is not decided.

DEFENDANTS' request for additional time to conduct discovery and more fully develop the facts in this case under F.R.C.P. Rule 56(f), incorporated in Bankruptcy proceedings by F.R.B.P. Rule 7056, is denied.

The COMMITTEE'S request for severance of these three claims under F.R.C.P. Rules 21 and 42(b), as incorporated by F.R.B.P. Rules 7021 and 7042 respectively, is granted.

## JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1409. The District Court has generally referred these matters to the Bankruptcy Court for determination pursuant to 28 U.S.C. § 157(a) and United States District Court, Eastern District of California, General Orders 182 and 223. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) & (K). This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law. The accompanying judgment shall constitute a final judgment for appeal purposes.

## APPEARANCES

This matter came on for hearing on March 3, 1993. W. Richard Lee of Kimble, MacMichael, and Upton appeared for the COMMITTEE. Russell D. Greer and Randolf Krbechek of Caswell, Bell, Hillison, Burnside, Greer and Azevedo appeared for the DEFENDANTS.[1] Riley C. Walter of McCormick, Barstow, Sheppard, Wayte & Carruth, debtor's counsel, was present. Argument was heard and the DEFENDANTS were allowed until March 5, 1993 to file a written response to the COMMITTEE's evidentiary objections. The matter was submitted March 5, 1993.

## SUMMARY JUDGMENT

### THE LEGAL STANDARD

Summary judgment is a method for promptly disposing of actions in which no genuine issue of material fact exists. It serves to avoid trial where the moving party is entitled to judgment as a matter of law. *Bloom v. General Truck Drivers, Office Food and Warehouse Union, Local 952,* 783 F.2d 1356, 1358 (9th Cir.1986); *IBEW, Local 47 v. Southern California Edison Company,* 880 F.2d 104, 105–106 (9th Cir.1989). To prevail, the moving party must establish by affidavit, pleadings, or answers to discovery, that no genuine issue as to any material fact exists and that the

moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56; F.R.B.P. 7056; see also *IBEW, Local 47 v. Southern California Edison Company, supra; In Re Tilbury,* 74 B.R. 73, 76 (9th Cir. B.A.P.1987); *In Re Stephens,* 51 B.R. 591, 594 (9th Cir.B.A.P.1985).

■ The mission of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether a genuine need for trial exists. Evidence shall be viewed in a light most favorable to the nonmoving party, and any doubt as to the existence of genuine issues of material fact will be resolved against the moving party. *IBEW, Local 47 v. Southern California Edison Company, supra; M/V American Queen v. San Diego Marine Construction,* 708 F.2d 1483, 1487 (9th Cir.1983); *Arizona Laborers, etc. v. Conquer Cartage Co.,* 753 F.2d 1512, 1515 (9th Cir.1985). Should the Court determine that no genuine issue for trial exists and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Although all reasonable inferences which may be drawn from the facts before the Court must be drawn in favor of the nonmoving party to defeat a motion for summary judgment, it is the nonmoving party's obligation to produce a *factual predicate* from which such inferences may properly be drawn. *Bhan v. NME Hospitals, Inc.,* 669 F.Supp. 998, 1005 (E.D.Cal. 1987), *aff'd* 929 F.2d 1404 (9th Cir.1991). The nonmoving party must show facts which support the existence of a viable legal theory and may not rely on unsupported or conclusory allegations in their pleadings. *Blodgett v. County of Santa Cruz,* 553 F.Supp. 1090, 1094 (N.D.Cal. 1981), *aff'd* 698 F.2d 368 (9th Cir.1982); *Coverdell v. Department of Social and Health Services,* 834 F.2d 758, 769 (9th Cir.1987). It is not enough that the nonmoving party point to disputed facts; rath-

---

1. The defendants in this adversary proceeding are RG Financial, Ltd., E. Gabriel Perle Profit Sharing Plan and Trust, Harold J. Gould, M.D., Richard A. Leibner, and Thomas Parissidi. For ease of reference they are collectively referred to as "DEFENDANTS".

er, they must make a sufficient showing to establish the existence of a triable issue of material fact as to an element essential to the moving party's case. *Lake Nacimiento Ranch v. San Luis Obispo County,* 830 F.2d 977, 979–980 (9th Cir.1987), cert. denied 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); see also *In Re Apple Computer Securities Litigation,* 886 F.2d 1109, 1112–1113 (9th Cir.1989), cert. denied sub nom *Schneider v. Apple Computer, Inc.,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

With the above considerations in mind, the Court turns to the COMMITTEE'S Motion for Summary Judgment.

## DISCUSSION

COMMITTEE seeks summary judgment as to the third and eighth claims for relief in this adversary proceeding. The third claim for relief seeks a declaration that the notes, supporting subscription agreements, and security agreements are void as a matter of law because, on their face, the notes charge a fee for the use of money which is prohibited under New York's civil and criminal usury law. As to the eighth claim for relief, the COMMITTEE seeks restitution of all post-petition payments from the DEFENDANTS.

The starting point in determining whether the notes and agreements are void as a matter of law is determining the choice of law issue raised in the third claim for relief. COMMITTEE contends that in this core proceeding, this Court must apply the federal common law choice of law rule to interpret and determine the consequences of the loan offering documents. Citing *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 162, 67 S.Ct. 237, 239–240, 91 L.Ed. 162 (1946) reh'g denied 329 U.S. 833, 67 S.Ct. 497, 91 L.Ed. 706 (1947); *In re McCorhill Publishing, Inc.,* 86 B.R. 783, 792 (S.D.N.Y.1988); *In re Perret,* 67 B.R. 757, 772 (N.D.N.Y.1986).

DEFENDANTS, while not agreeing with the COMMITTEE's interpretation of *Vanston Bondholders,* do agree that, absent application by this Court of the "Rule of Validation," the Court should apply the law

of the forum with the most substantial contacts to the transaction. DEFENDANTS argue California law is the law to be applied in this proceeding.

While there is little authority on this particular issue, one decision from the Second Circuit has been cited with some frequency, and in part held:

> "The use of federal common law in specialized areas where jurisdiction is not based on diversity has been sanctioned by the Supreme Court since the day *Erie* was decided ..." *Corporacion Venezolana De Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 795 (2d Cir.1980) *cert. denied* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981) (holding that federal common law choice of law rules are to be applied in federal question cases.)

■ The Ninth Circuit has embraced application of the federal common law choice of law rules in federal question cases. *Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987); approvingly cited in *Union of Flight Attendants, Local No. 1 v. Air Micronesia, Inc.,* 684 F.Supp. 1520, 1528 (D.Hawaii 1988). As core proceedings in bankruptcy are federal questions, this Court finds and holds that the federal common law choice of law rules apply in this instance.

■ The Court concurs with the COMMITTEE and DEFENDANTS that in applying federal choice of law rules, the significant relationship test is used to determine which state laws should apply to the transaction. *Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987); *In re Perret,* 67 B.R. 757 (N.D.N.Y.1986); *In re McCorhill Publishing, Inc.,* 86 B.R. 783, 792 (S.D.N.Y.1988).

■ Turning to the facts herein, the Court is persuaded by the COMMITTEE's argument that New York law should control. The evidence shows that all of the documents to the transaction were prepared by Daniel J. Barsky at his law firm in New York City. Of the four defendants affected by the instant motion, two at least

reside in New York.[2] COMMITTEE asserts that three of four of the individual defendants reside in New York. However, the Court can only determine that two reside in New York. The other two defendants reside in Connecticut and Washington, D.C.[3]

Of significant importance is the place of execution of each Subscription Agreements. (See *In re McCorhill Publishing, Inc.*, 86 B.R. 783, 792 (S.D.N.Y.1988) holding that the most significant factor in determining whether a contract has a "substantial relationship" to a state is the place of contracting.) Each Subscription Agreement was executed and notarized in New York and each of the DEFENDANTS gave RG Financial powers of attorney in New York to enforce the contracts in New York. (See Exhibits C, D, E, F, & P to COMMITTEE'S Evidence, Exhibits, and Request For Judicial Notice filed January 19, 1993, in support of the Motion for Summary Judgment.)

Another important consideration is the relative status of the DEFENDANTS. The DEFENDANTS were sophisticated investors, classified as an "Accredited Investor" with a net worth in excess of $1,000,000.00.

Two of DEFENDANTS, as individual investors, also had income in excess of $200,-000.00 for the two years immediately preceding execution of the Subscription Agreements. Regarding the Perle Trust, the Subscription Agreement required that to qualify as an investor, each equity owner of the trust must have been an "Accredited Investor". Each of the Subscription Agreements, as well as the Notes and Security Agreements, contain express provisions and covenants that New York law will control without regard to conflict of law principles.[4] Moreover, each of the DEFENDANTS expressly acknowledged that they relied upon the advice of their own legal counsel regarding the legal aspects surrounding the investment. Accordingly, each of the DEFENDANTS knew, should have known, or at least relied upon their own legal counsel, as to the decision to expressly provide for the application of New York law to each of the agreements and notes.

Another compelling factor is that under California law, the original issue discount of 5% could not have been included in the offering. This was material to these transactions that were designed as short-term

2. Thomas Parissidi lists his residence as 11 The Mast, East Islip, N.Y. 11730 and Richard A. Leibner lists his residence as 1740 Broadway Ave., N.Y., N.Y. 10019.

3. E. Gabriel Perle, Trustee of the Perle Trust, resides at 3–G Weavers Hill, Greenwich, Ct. 06831. Harold J. Goald, M.D. resides at 3030 K St., N.W., Apt. 101, Washington, D.C. This is set out in the Subscription Agreements as well as ¶ 8 of the DEFENDANTS' Statement of Undisputed Facts.

4. The fact that the DEFENDANTS, as sophisticated investors, chose to include specific language in the Subscription Agreements, Secured Notes, and Security Agreements that New York law controls without regard to conflict of law principles is compelling.

Regarding each of the Subscription Agreements, (Exhibits C, D, E, & F), ¶ 2.1 states, "I acknowledge that I am aware of the risk associated with an investment in the Company." The company in which the investment was made was, pursuant to the Subscription Agreement, Western Canada Beverage Corporation. ¶ 2.3 of the Subscription Agreements states "I am able to bear the economic risk, including total loss, of my investment in the Note."

Further, and of great significance, is the express acknowledgement by each of the DEFENDANTS in the Subscription Agreements at ¶ 2.9 that, "I have relied solely upon the advice of my own legal advisors with respect to the legal aspects of this investment."

Lastly, regarding the Subscription Agreements, each of the DEFENDANTS expressly agreed in ¶¶ 9.2 and 9.3 that New York law would control regardless of the place of execution of the agreements and that the Agreements constituted the entire agreement between the parties.

The Court also notes that the Secured Notes due July 31, 1992 (Exhibits G, H, I, & J) each contained an express provision in Article 8 respecting the governing law, that, "This Note shall be construed and enforced in accordance with, and governed by, the law of the State of New York without giving effect to principles of conflicts of law thereunder."

Regarding the Security Agreements, Exhibits K, L, M, & N, ¶¶ 8 and 13 each provide that the applicable law shall be New York law. Paragraph 13 expressly provides, "This Security Agreement shall be governed by the laws of the State of New York, without regard to principles of conflict of laws."

loans structured to provide the investors with a high rate of return while insuring their existing investments. While corporations may not avail themselves to the civil usury defenses under New York law, they are not precluded from raising civil usury defenses under California law. (See Constitution of the State of California, Article 15, § 1.) Clearly, these documents were drafted to avoid the possibility of such defenses. Additionally, regarding New York contacts, payment or performance under the notes was required in New York. Moreover, debtor's agent for service in New York was Daniel J. Barsky. Barsky's law office was in New York. He also drafted the Subscription Agreements and made the offerings to the defendant/investors. He was also an officer of the debtor.

There are many substantial contacts with New York. Considering the financial wherewithal and apparent investment sophistication of the investors, as well as the apparent effort to maximize their investments while at the same time acknowledging the associated risks, the Court finds these investors made informed decisions in regard to their investments. Integral to each of their decisions was the decision to expressly provide that New York law would control each of the agreements and notes to preclude the raising of any potential civil usury defenses. These factors weigh heavily in the choice of law analysis.

DEFENDANTS on the other hand assert that all of the contacts with New York were merely paper and that the real, direct and physical contacts are with California. They assert that debtor's headquarters, operations and principal market was in California. DEFENDANTS assert that debtor's president lived in California when the agreements and notes were executed and that all of the funds were transmitted for use in California. Moreover, they assert that they each anticipated that the funds loaned would be used in California. DEFENDANTS also argue that debtor was a California corporation, incorporated in 1987 and thereafter reincorporated in Delaware in 1991. The Court notes that all of the subject agreements were executed in 1992, at a time when debtor was a Delaware corporation.

Contrary to the DEFENDANTS' assertions that the most significant contacts are with California, this Court concludes that the factors pointed to by the COMMITTEE show beyond doubt that the most significant contacts surrounding the loan offerings were with New York.

The evidence is clear that the parties intended and specifically agreed that New York law was to control as to the loan offering agreements and notes. Accordingly, the Court finds and holds that New York law is the law this Court will apply through application of the federal common law choice of law rules.

DEFENDANTS contend that application of the Rule of Validation would make California law the controlling law. The Court, however, concurs with the COMMITTEE that the DEFENDANTS expressly contracted to disregard such conflict of law rules. The Notes at Article 8 and Security Agreements at paragraph 13 each expressly provide to give no effect to the principles of conflict of laws, which in New York include the Rule of Validation. As discussed earlier, each defendant is a sophisticated investor and assumed all the risks of the investment, including total loss when deciding to make their respective investments. They cannot now repudiate the express provisions that they knowingly allowed to be included in the subject documents. Accordingly, the Court finds and holds that the Rule of Validation has no application herein as DEFENDANTS knowingly waived that choice of law principal.

 While corporations may not raise civil usury defenses under New York law, they may raise criminal usury defenses. *In re McCorhill Publishing, Inc.,* 86 B.R. 783, 791–792 (S.D.N.Y.1988) Under New York law, a person[5] is guilty of criminal usury when he or she knowingly charges,

---

**5.** Under New York law, the definition of person also includes entities such and the Perle Trust. *Ludlum Corp. Pension Plan Trust v. Matty's Su-* *perservice, Inc.,* 156 A.D.2d 339, 548 N.Y.S.2d 292 (1989); see also N.Y. Penal Law § 190.40.

takes, or receives any money as interest on a loan at a rate in excess of 25% per annum or the equivalent rate for a shorter or longer period of time. N.Y. Penal Law, § 190.40; *In re McCorhill Publishing, Inc.*, 86 B.R. 783, 792 (S.D.N.Y.1988). To determine if notes are usurious, the court should add the original issue discount to the interest charged to determine the actual interest rate on the loan. *Hammelburger v. Foursome Inn Corp.*, 76 A.D.2d 646, 437 N.Y.S.2d 356 (1980), *modified on other grounds*, 54 N.Y.2d 580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981) citing *Band Realty Co. v. North Brewster, Inc.*, 37 N.Y.2d 460, 373 N.Y.S.2d 97, 335 N.E.2d 316 (1975); see also *In re Chateaugay Corp.*, 109 B.R. 51, 55 (S.D.N.Y.1990) noting that original issue discount is interest within the meaning of 11 U.S.C. § 502(b)(2).

This Court concurs with and applies the formula for calculation of interest as applied by the *Hammelburger* court. Each of the four notes at issue shows on its face a rate of interest in excess of 25%.

Regarding the Perle Note, $7,394.12 in interest was charged for the use of $100,000.00 for 78 days. The effective rate of interest charged under that note equates to an annual rate of 34.6%.

Regarding the Leibner Note, $7,366.80 was charged in interest for the use of $100,000.00 for 77 days. The effective rate of interest charged under that note equates to an annual rate of 34.9%.

The Goald Note charged $14,515.04 in interest for the use of $200,000.00 for 73 days. The effective rate of interest under that note equates to an annual rate of 36.3%.

Lastly, the Parissidi Note charged $13,859.36 in interest for the use of $200,000.00 for 61 days. The effective rate of interest under that note equates to an annual rate of 41.5%.

Accordingly, the Court finds and holds that each of the above notes are violative of the New York criminal usury statute as they charge interest exceeding 25% per annum.

■ DEFENDANTS argue that, should the Court determine the notes to be usurious, the COMMITTEE is estopped from raising the usury argument and that the debtor ratified the agreements by making payments to DEFENDANTS. These arguments are not persuasive. Nor is DEFENDANTS' argument that they are allowed to retain the payments already made. The cases cited in DEFENDANTS' Opposition are inapposite to the facts at hand. Those cases failed to account for the avoiding powers that exist in bankruptcy.

As to the unconscionability argument raised by the DEFENDANTS, the Court has already discussed the fact that the DEFENDANTS are each sophisticated investors and knowingly entered into these agreements fully aware of all risks including the risk of losing their entire investment. Each DEFENDANT relied solely upon the advice of their counsel in determining whether to enter into these transactions. To now seek a determination that the agreements and the potential results were unconscionable, is not warranted under the facts. Other remedies exist for DEFENDANTS to right the inequities they assert will occur by finding the notes void.

Accordingly, the Court finds and holds that the COMMITTEE is not estopped by virtue of debtor's conduct, that there has been no ratification of the agreement that would undermine the avoidance powers under the Code, and that the transactions were not unconscionable under the circumstances. Summary judgment is appropriate as to the third cause of action as no triable issues of material fact exist and the Notes are violative of the New York criminal usury statute.

■ The eighth cause of action seeks restitution of monies paid. As in *McCorhill*, this Court finds and holds that restitution is warranted. The appropriate remedy in this case is to declare the Notes and supporting Subscription Agreements void and without further effect. Restitution shall be made and the DEFENDANTS shall disgorge all monies previously paid to them individually and those monies held in Mr. Greer's trust account under the cash

collateral order previously entered by this Court.

By granting summary judgment on the third and eighth causes of Action, the first cause of Action is moot. Therefore, no determination is necessary or made as to the motion for summary judgment on the first cause of action.

DEFENDANTS' request for additional time under F.R.C.P. Rule 56(f) is DENIED. Contrary to their assertion, adequate time has been allowed to develop their opposition. This matter has been continued by the parties one time by stipulation. Substantial evidence has been submitted by both parties and the law well briefed. The matter is ripe for determination. The COMMITTEE's request for judicial notice of the Stipulated Order for Continuance filed February 2, 1993, is GRANTED.

■■■ Regarding the request to sever the first, third and eighth causes of action from the complaint, the Court finds and holds that severance under F.R.C.P. 21 as incorporated in bankruptcy proceedings is appropriate. Severance acts in furtherance of convenience in this proceeding, is not prejudicial and serves to expedite this matter which is in the interest of judicial economy.

### CONCLUSION

Summary judgment on the third cause of action is appropriate as the notes on their face bear an interest rate in excess of the New York criminal usury statute. Accordingly, the notes are void and of no effect. Restitution is appropriate as prayed for under the eighth cause of action. DEFENDANTS shall forthwith disgorge all monies previously paid and those monies held by Mr. Greer in his trust fund. Severance of the first, third, and eighth causes of action is appropriate.