UNITED STATES of America,
Plaintiff–Appellee,

and

Charles M. Carberry, Appellee,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants,

and

Ed J. Mireles And Paul
Roa, Appellants.

Docket No. 01–6054.

United States Court of Appeals,
Second Circuit.

Oct. 23, 2002.

Andrew W. Schilling, United States Attorney's Office for the Southern District of New York, New York, N.Y. (Mary Jo White, United States Attorney, and Gideon A. Schor, Assistant United States Attorney, on the brief), for Appellee United States of America.

Charles M. Carberry, New York, N.Y. (Traci L. Jones, Celia A. Zahner, on the brief), for Appellee Carberry.

Glenn Rothner, Rothner, Segall & Greenstone, Pasadena, CA, for Appellants.

Present JACOBS, SACK, and KATZMANN, Circuit Judges.

Edward J. Mireles and Paul J. Roa appeal from a final order of the United States District Court for the Southern District of New York (Preska, J.), which granted an application of the Independent Review Board ("IRB") for entry of an order upholding charges and sanctions imposed against Mireles and Roa, both members and former officers of the International Brotherhood of Teamsters ("IBT").

The IRB found that Mireles, the Secretary–Treasurer and principal officer of IBT Local 952 from 1989 until 1999, instituted a policy requiring IBT members who served as business agents of the local union to make dues payments on an untimely basis. Since a member who pays dues late is ineligible to run for a local office position, Mireles thereby disabled his business agents from challenging him in a union election. The district court order upheld the IRB's findings that Roa enforced Mireles' scheme, and that Mireles lied under oath about his role in it and encouraged others to do the same. The court therefore affirmed the IRB's ruling barring Mireles and Roa from holding any position as an IBT officers for seven and four years, respectively, and suspending Mireles and Roa from IBT membership for four and two years, respectively.

On appeal, appellants Mireles and Roa argue that (1) the IRB lacked authority to sanction their alleged conduct, and (2) the IRB's finding that Mireles and Roa brought reproach upon the IBT is not supported by substantial evidence.

We conclude that the IRB had authority to sanction Mireles' and Roa's conduct. This proceeding arises under the Consent Decree that resolved claims brought by the United States against the IBT and other defendants under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.[1] See United States v. IBT ("1991 Election Rules Order"), 931 F.2d 177, 180–81 (2d Cir.1991). The Consent Decree implemented numerous measures "premised on the notion that [standards imposed by federal labor law] were not sufficient to rid the IBT of corruption and the influence of organized crime, or to bring democracy to the IBT." United States v. IBT ("Carey Disqualification"), 988 F.Supp. 759, 768 (S.D.N.Y.1997), aff'd, 156 F.3d 354 (2d Cir.1998). The purpose of the reforms was to achieve the goal "that the IBT ... be maintained democratically, with integrity and for the sole benefit of its members and without unlawful outside influence."

The Consent Decree provided for the establishment of the IRB, "a permanent institution vested with power to investigate and eradicate corruption, and to monitor the IBT's attempts to eradicate corruption." United States v. IBT ("IRB Rules"), 803 F.Supp. 761, 780 (S.D.N.Y. 1992), aff'd as modified, 998 F.2d 1101 (2d Cir.1993). Pursuant to the Consent Decree, the IRB's authority is co-extensive with that of the IBT General President and General Secretary–Treasurer under the IBT Constitution. Since the IBT Constitution authorizes the IBT General President "to interpret and apply" the IBT Constitution and "to decide all questions of law thereunder," see IBT Const. Art. VI, Sec. 2(a), the IRB's authority "necessarily

---

1. The principal provisions of the Consent Decree have been summarized in numerous prior opinions of this Court. See, e.g., 1991 Election Rules Order, 931 F.2d at 180–81; United States v. IBT ("Friedman & Hughes"), 905 F.2d 610, 613 (2d Cir.1990); United States v. IBT ("IRB Rules"), 998 F.2d 1101, 1105–06 (2d Cir.1993).

includes the final authority to decide what constitutes an offense subject to discipline under the IBT Constitution." *Friedman & Hughes,* 905 F.2d at 619. Therefore, the scope of the IRB's power under the Consent Decree is not limited to violations of federal labor or criminal law. The Consent Decree recognizes that "conduct which brings reproach upon the IBT," in violation of Article II, Section 2(a) and Article XIX, Sections 7(b)(1) and (2) of the IBT Constitution, is "within the [IRB's] investigatory and decisional authority." *See United States v. IRB, (Rules),* 803 F.Supp. 761, 802 (S.D.N.Y.1992) (stating and approving rules governing operation of IRB), *aff'd in relevant part,* 998 F.2d 1101 (2d Cir.1993).

The IRB therefore had authority to investigate and bring disciplinary charges when it learned of the scheme involving dues default, and suspected it brought reproach upon the IBT.[2] Mireles and Roa contend that their conduct was not unsavory because it was not inconsistent with the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 *et seq.* ("LMRDA"), and therefore did not bring reproach upon the union, citing *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), and *Bloom v. Local 952,* 783 F.2d 1356 (9th Cir.1986). In *Finnegan,* the Supreme Court considered "whether the discharge of a union's appointed business agents by the union president, following his election over the candidate supported by the business agents, violated the [LMRDA]," 456 U.S. at 432, and ruled that because the LMRDA protects the rights of union members as members and not as union employees, the termination of business agents because of their support for a rival candidate did not violate the LMRDA so long as the business agents retained their membership rights. *Finnegan,* 456 U.S. at 441. In *Bloom,* the Ninth Circuit (relying on *Finnegan*) held that a business agent of Local 952 who was discharged because he supported a rival candidate in the local union's election failed to state a claim for relief under the LMRDA. 783 F.2d at 1359 & n. 3.

*Finnegan* and *Bloom* are distinguishable. The issue here is not whether the business agents have an actionable claim for impairment of their membership right to stand for election, but whether the conditioning of union employment on relinquishment of a membership right brought reproach upon the union. The *Finnegan* and *Bloom* courts held only that the business agents there had no cause of action under the LMRDA, because although they lost their positions as business agents, they retained their rights as members. Here, the business agents were deprived of their rights as members to run for election to union office. *See Carey Disqualification,* 156 F.3d 354, 361 (2d Cir. 1998) (holding that act of making a person ineligible to seek union office "affects him

2. When the IRB, pursuant to its investigatory powers, first learned about Mireles' and Roa's alleged improper conduct, it did not immediately bring disciplinary charges but conducted an evidentiary hearing and issued an investigative report recommending, *inter alia,* that the IBT bring charges against Mireles and Roa. Two IBT panels heard evidence regarding the charges; the first rendered no decision, and the second found that the charges had been sustained against Mireles but not against Roa. The IBT's General Executive Board ("GEB") adopted the panel's findings and recommendations with respect to Mireles, and the IBT's president adopted the findings and recommendations with regard to Roa. On appeal, the IRB declared the IBT's decisions regarding Mireles and Roa to be inadequate, and, upon finding that the actions of the GEB and its president were inadequate, scheduled its own hearing on the charges. The hearing took place on April 17–18, 2000, and the IRB's decision, dated October 17, 2000, stemmed from the hearing.

as a member" under federal labor law). We think that the IRB's findings that Mireles and Roa secretly affected the rights of members are sufficient to support its exercise of jurisdiction, which is not limited to violations of federal labor law but is instead, under the Consent Decree, coextensive with that of the IBT General President and General Secretary–Treasurer.

Further, we conclude that substantial evidence supports the IRB's findings that Mireles and Roa brought reproach upon the IBT. Substantial evidence is something more than "a mere scintilla" but something less than "the weight of the evidence," *see United States v. IBT ("Simpson")*, 120 F.3d 341, 346 (2d Cir.1997), and the "test is deferential," *United States v. IBT ("Giacumbo")*, 170 F.3d 136, 143 (2d Cir.1999). "Substantial evidence includes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *United States v. IBT ("Simpson")*, 120 F.3d 341, 346 (2d Cir.1997) (internal quotation marks omitted). Inferences that the IRB draws from facts are "discretionary and can only be disturbed if they are arbitrary and capricious." *Giacumbo*, 170 F.3d at 143 (internal quotation marks omitted).

At a hearing conducted by the IRB on April 17 and 18, 2000, the Chief Investigator called five witnesses, introduced into evidence transcripts of sworn testimony of twelve current and former members of Local 952, and submitted printouts from the IBT's computer system.[3] Mireles and Roa called six witnesses and testified in their own defense. Ten witnesses confirmed that Mireles was involved in a scheme that required certain business agents who were not enrolled in an automated dues "check-off" system to miss a monthly dues payment to ensure ineligibility. Computer records showed that all officers, business agents, and employees of the local paid their dues by "check-off" before 1990, but that within three months after Mireles assumed office, business agents paid dues by "self-pay" method, and (with one exception) "no business agent on the self-pay system was eligible to run in the 1992, 1995, and 1998 Local 952 Local officer elections." In short, the scheme at issue secretly narrowed the field of possible officers, partially insulated an officeholder from challenge, and thereby impaired the system of open competitive election to union office. We think this is enough to bring reproach upon the union.

Mireles and Roa argue the credibility and proper weight of certain testimony; however, the members of the IRB are "best equipped to evaluate the demeanor, credibility and, ultimately, culpability of those who appear before them." *United States v. IBT ("Carey & Hamilton")*, 247 F.3d 370, 380 (2d Cir.2001) (internal quotation omitted). "In accordance with the great deference owed to the IRB's determinations, law in this circuit establishes that a court 'will not substitute its assessment of a witness's credibility for that of the IRB.'" *Id.* (quoting *United States v. IBT ("Simpson")*, 931 F.Supp. 1074, 1096

---

3. Mireles and Roa challenge the IRB's reliance on hearsay testimony of witnesses who were not subject to cross-examination. The IRB may rely on hearsay so long as it is "reliable." *See United States v. IBT ("Boggia")*, 167 F.3d 113, 118 (2d Cir.1999); *United States v. IBT ("DiGirlamo")*, 19 F.3d 816, 823–24 (2d Cir.1994). Hearsay is "reliable" for the purposes of an IRB hearing if it is corroborated by other hearsay or non-hearsay evidence, includes specific detail, or is made under oath. *See DiGirlamo*, 19 F.3d at 823; *United States v. IBT ("Cimino")*, 964 F.2d 1308, 1312–13 (2d Cir.1992). The sworn statements at issue are sufficiently reliable. They corroborated each other and were corroborated by the TITAN records.

(S.D.N.Y.1996), *aff'd,* 120 F.3d 341 (2d Cir. 1997)).

For the reasons stated herein, Mireles' and Roa's claims are hereby **DENIED.**